# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

## CIVIL CASE NO. 3:05cv283
### [Lead Case]

| | | |
|---|---|---|
| JOHN F. SIMONTACCHI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM OF DECISION** |
| | ) | **AND ORDER** |
| INVENSYS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before the Court on the Defendant's Motion for Summary Judgment, filed July 2, 2007 [Doc 33]; and the Plaintiff's "Motion to Court's Request on Issue of Preemption," filed October 31, 2007 [Doc.48], which is actually a response to the Court's Order of October 23, 2007.

## PROCEDURAL HISTORY

On June 17, 2005, the Defendant Invensys, Inc. (Invensys) removed this action (which will be referred to herein as Simontacchi II) which had been filed in state court by the Plaintiff John F. Simontacchi (Simontacchi).

The sole relief sought by Simontacchi was a claim pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §1001, *et. seq.*, specifically Section 502(a)(1)(B), to recover long term disability benefits. As a result, Invensys removed the action based on federal question jurisdiction.

After removing the action, Invensys answered and asserted a counterclaim for breach of contract. In the counterclaim, Invensys alleged that the parties had previously settled a different lawsuit, <u>Simontacchi v. Invensys, PLC and Robertshaw Controls Company</u>, 3:03cv442, (Simontacchi I), and that Plaintiff had breached a confidentiality provision in the settlement agreement in bringing the present action.

While this action (Simontacchi II) was pending, Plaintiff filed yet a third action in state court on January 9, 2006. <u>Simontacchi v. Invensys, Inc.</u>, 06CVS280, Superior Court Mecklenburg County (Simontacchi III). In that action, he alleged a claim for breach of contract for Invensys having failed to pay certain short term disability benefits, a request for a declaratory judgment of his entitlement to those short term disability benefits, a claim for breach of a covenant of good faith and fair dealing and a claim for a violation of the North Carolina Wage and Hour Act. Citing

diversity jurisdiction, Invensys removed that additional action, Simontacchi III, to this Court on February 7, 2006. Simontacchi v. Invensys, Inc., 3:06cv52.

On February 14, 2006, Invensys filed an Answer and Counterclaims in Simontacchi III. Therein Invensys claims that if Plaintiff is allowed to recover short term disability benefits, then pursuant to a theory of unjust enrichment Defendant should be entitled to recoup salary and benefits provided to Simontacchi for a six month period as described below, as the two would constitute a double recovery for Plaintiff. As a second counterclaim, Invensys claims that the assertion in Simontacchi III of claims for breach of contract, breach of the covenant of good faith and fair dealing and violations of the North Carolina Wage and Hour Act breached the parties' settlement agreement in Simontacchi I (3:03cv442). Finally, Invensys asserts a third counterclaim for specific performance of that settlement agreement.

Answering Invensys' counterclaims, Simontacchi filed a response which included what he termed "Counterclaims" whereby he attempted to assert additional claims against Invensys for breach of contract, specific performance of the settlement agreement, malicious use of process, and

abuse of process.  <u>Answer to Counterclaims and Counterclaims</u>, filed

March 3, 2006.

On April 26, 2006, Simontacchi II and Simontacchi III were

consolidated into the action that is presently before this Court.  The parties

proceeded with discovery pursuant to a pre-trial order and case

management plan.  On July 2, 2007, Invensys filed this motion for

summary judgment.  After the case was reassigned to the undersigned,

Plaintiff was served with a <u>Roseboro</u>[1] order to which he responded.  In

addition, the parties attended a status conference on November 19, 2007.

Since Plaintiff's ERISA claim is based solely on the administrative

record, <u>Quesinberry v. Life Ins. Co. of North America</u>, 987 F.2d 1017 (4th

Cir. 1993), the Court will address it separately from the other claims

asserted by the parties, and it will be severed from the trial that is

scheduled in this matter for February 2008.  The ERISA claim will be

disposed of by separate Order to be entered at a later date.  The Motion

for Summary Judgment addressed herein pertains only to the non-ERISA

claims, including the claim for short-term disability benefits, as well as the

_____

[1]<u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975).  Plaintiff has appeared *pro se* throughout Simontacchi II, Simontacchi III and the consolidated action, even though he was represented by counsel throughout Simontacchi I.

4

Defendant's counterclaims.

## FACTUAL BACKGROUND

The following facts are undisputed or are taken in the light most favorable to the non-moving party (Plaintiff).

Because there are claims that the previous settlement agreement was breached, and because there are issues regarding the application of the doctrine of *res judicata* to the manner in which Simontacchi I was conlcuded, it is necessary to review the allegations made by the Plaintiff in that first case.  In that Complaint, Simontacchi alleged:[2]

1.    Simontacchi was employed by Barber Colman, a division of Siebe, from 1995 until 1999 as vice-president and general manager of the Industrial Instruments Division. [Complaint I at ¶6[3], Declaration of Carol Christianson, at ¶14].

2.    In December 1998, the Chief Executive Officer (CEO) of Siebe Intelligent Automation Division offered Plaintiff a job managing

---

[2]In addition to citations to the pleadings, the Court cites admissible evidence presented by the parties in connection with the motion for summary judgment.

[3] Complaint I refers to the Complaint in Simontacchi I.  Neither party filed in this action a copy of the pleadings in Simontacchi I, but the Court takes judicial notice of what has previously been filed with this Court in that earlier action, 3:03cv 442.  Q International Courier, Inc. v. Smoak, 441 F.3d 214 (4th Cir. 2006); Andrews v. Daw, 201 F.3d 521 (4th Cir. 2000).

Robertshaw Industrial Products Division (Robertshaw). [Complaint I at ¶7]. Robertshaw was a "component" of Siebe and Simontacchi's job was to form it into a division, turn it around and position it for sale or integration into Siebe as a separate division. *Id*.

3.  In addition to his salary and benefits, Simontacchi was to receive a "special bonus program" that was to be developed for him based upon Robertshaw meeting or exceeding certain annual targets and a separate bonus "details of which will be discussed and agreed by George Sarney, Peter Wade and yourself," if Robertshaw was successfully sold or integrated into Siebe. [Complaint I at ¶¶8, 10; Letter dated December 22, 1998, Exhibit A to Complaint I]. Although Simontacchi was assigned to Robertshaw, he remained an employee of Barber Colman for salary, benefits and bonus purposes. [Complaint I at ¶9; Exhibit A, *supra*]. Simontacchi accepted the offer and in October 2000, he became the president of Robertshaw. [Complaint I at ¶20].

4.  In January 1999, Siebe and another company merged to create Invensys. [Complaint I at ¶13]. On October 31, 2001, Simontacchi elected specified group benefits provided through "Invensys Inc. -

Controls," including long term disability benefits. [Exhibit B, attached to Christianson Declaration, *supra*, at S-0112, S-0113]. The parties do not dispute that short term disability benefits were provided through a non-ERISA plan, the "Accident & Sickness Plan, Salaried Exempt Employees," through Invensys. [Exhibit A, attached to Declaration of Steve Ives, attached to Defendant's Memorandum, *supra*].

5.   The parties never finalized the terms of the bonus package. [*Id*. at ¶¶14, 15]. Simontacchi claimed that although his personal "special bonus program" was never completed, he was a named participant in the Robertshaw IPD  Special Bonus Plan developed in October 2001. [*Id*., at ¶¶24, 25]. Simontacchi alleged that under the IPD Special Bonus Plan, he would have been entitled to pro rated bonuses in the event that he left employment due to ill health, disability or retirement. [*Id*., at ¶26]. The IPD Special Bonus Plan did not provide for such payments in the event of termination except "in the sole discretion" of Invensys. [Plan Document at ¶2.5, which is an Exhibit[4] to Complaint I].

---

[4] Though the Plan document is attached to Complaint I, it was not given an identifying number or letter.  It is the last Exhibit attached to Complaint I.

6.  Plaintiff claimed that he turned Robertshaw into a successful business which Invensys was poised to sell when it notified him on January 14, 2003 that his employment was being terminated. [Complaint I at ¶¶31, 32, 33].

7.  Simontacchi asserted a claim for breach of contract alleging that the Defendant had failed to pay him in accord with his contract of employment, particularly the "special bonus program" which he admitted the parties never finalized. He also asserted claims for declaratory judgment that he was entitled to participate in that program as well as the IPD Special Bonus Plan, breach of the covenant of good faith and fair dealing, and a violation of the North Carolina Wage and Hour Act.

Invensys answered, admitting that Simontacchi was given notice that his employment was being terminated on January 14, 2003 and acknowledging that because of a six months notice of termination provisionthat Simontacchi had asserted, Invensys had paid him six months of salary, benefits and vacation ending on July 14, 2003. [Answer, Simontacchi I]. On October 7, 2004, the Court was notified that the parties had reached a settlement and a Stipulation of Dismissal With Prejudice

was filed on November 19, 2004.

The parties signed a "Settlement Agreement & Release" on November 18, 2004 which recited that Simontacchi had asserted claims for "breach of contract, declaratory judgment, breach of the covenant of good faith and fair dealing, and claims under the North Carolina Wage and Hour Act[.]" [Exhibit 3, attached to Memorandum in Support of Defendant's Motion for Summary Judgment, filed July 2, 2007, at I 0001]. In exchange for the payment of a sum of money, which has been redacted from the copy of the agreement filed[5], Simontacchi released Invensys and its affiliates from

> all claims arising out of his employment with Defendants, *all claims for breach of express or implied contract or covenant of good faith and fair dealing*, all claims for retaliation, violation of public policy, negligence, *breach of fiduciary duty*, defamation, impairment of economic opportunity, interference with contractual relations, *all claims for violation of North Carolina statutory and common law*, and all claims arising under the following: Title VII of the Civil Rights Act of 1964, as amended; the Fair Labor Standards Act; *the North Carolina Wage and Hour Act*; the Employee Retirement Income Security Act of 1974, as amended; the Consolidated Omnibus Budget Reconciliation Act; the National Labor Relations Act; the Equal Pay Act; the Age Discrimination in Employment Act; the Family

---

[5] Though Defendant made extensive redactions to the copy of the Settlement Agreement & Release that it attached to its Memorandum, Plaintiff filed an unredacted copy of the document as the second (unnumbered) attachment to "Plaintiff's Memorandum in Response to Court's Questions at 11-19-17 Status Conference," filed November 26, 2007.

and Medical Leave Act; the Americans with Disabilities Act; 42
U.S.C. §1981; any other federal, state or local laws relating to
employment or benefits associated with employment; claims for
emotional distress, mental anguish, assault and battery, personal
injury; claims based upon any theory of unintentional, negligent or
intentional tort; claims based upon any theory of wrongful, retaliatory
or constructive discharge; and any and all claims that may be
asserted on Simontacchi's behalf by others.

*Id*., at I 0002-0003 (emphasis provided).

The parties to the settlement made two very specific and narrow

exceptions to the broad and general release, stating that

The foregoing Releases shall not affect Simontacchi's *ability to
pursue* a claim for short term disability benefits pursuant to
Invensys Accident & Sickness Plan or any predecessor short
term disability plan such as the Barber Colman Company
Weekly Accident and Sickness Salaried Exempt Employee
Plan, if applicable, or long term disability benefits pursuant to
the Invensys Long Term Disability Plan (Group Policy Number
LK-030471), if any claims so exist.

*Id*., at I 0004 (emphasis provided). The Agreement also recited that the

lump sum payment was in settlement of all claims relating to "disputed

bonuses and compensation which were claimed to be owed to Simontacchi

and in consideration of the promises and obligations of this Agreement."

*Id*., at I 0005.

The Agreement contained a confidentiality clause.

The parties agree to keep *the fact, amount, and terms of this
settlement in strict confidence*, unless and only to the extent they

have been authorized by this Agreement or otherwise in writing by the other parties to make disclosure. *The Parties, may, if specifically asked about the dispute, state it was resolved, but the Parties shall not further characterize the settlement or the claims that were the subject of this Agreement*.

...

The Parties further agree not to disclose this document, its contents or subject matter to any person other than to their lawyers, accountants, spouses, income tax preparers, or the executor(s) of that party's will, except pursuant to written authorization by the other parties or as compelled by law or a court of competent jurisdiction. ... This Agreement may be used as evidence in any subsequent proceeding alleging a breach of this Agreement.

[Settlement Agreement, Exhibit 3, *supra*, ¶6. (emphasis added)].[6]

On May 19, 2005, Simontacchi filed a Complaint in state court, subsequently removed to this Court as Simontacchi II, alleging his ERISA claim that is not addressed in this Order. In that Complaint he alleged:

In addition to the commissions paid in 2001 of $70,347 and in 2002 of $25,275, there was a commission due in 2001 from the contract dated January 7, 1999 per Exhibit B of 50% of salary ($101,100) since Invensys made the decision in 2001 to leave [Robertshaw] alone (not sell) due to improved profitability and growth opportunities. Simontacchi received a settlement from Invensys of $95,000 on November 16, 2004 for claims that relate to disputed compensation from Exhibit B.

Complaint II, <u>supra</u>., at ¶25.

Invensys counterclaimed alleging that Plaintiff's allegation of the

_____

[6]Exhibit 3, attached to Invensys' motion was missing page I 0006 and as a result, the Court refers in this instance to the exhibit attached to Simontacchi's response.

amount of the settlement in Simontacchi I constituted a breach of the

confidentiality provision in the settlement agreement. [Answer II].

In his Affidavit offered in opposition to the present motion, Plaintiff

admits that he has disclosed the terms of his settlement agreement in

Simontacchi I (3:03cv442), but he argues that disclosure is not a breach.

> Plaintiff didn't breach the parties' settlement agreement by
> disclosing in his Complaint the settlement payment he
> received. . .Simontacchi's Claims in Civil Action No.: 3:05cv283
> [Simontacchi II] for additional Long Term Disability ("LTD")
> benefits clearly allow him to include the settlement amount
> because it is part of his Lawsuit to include this
> incentive/bonus/commission in the calculation for additional
> LTD benefits[.]

[Simontacchi Affidavit, *supra*, at ¶37]

While Simontacchi II was pending, Plaintiff brought a third action,

Simontacchi III, in which he alleged that he was entitled to a short term

disability benefit. [Complaint III at ¶¶6, 8, 11].  The copy of the plan

attached to Complaint III shows that Plaintiff makes reference to the

"Invensys Accident & Sickness Plan for Salaried Exempt Employees."

[Exhibit B to Complaint III, *supra*].  Simontacchi also alleged that after

being advised on January 14, 2003 that his employment was being

terminated, he told Invensys' vice president of human resources, Steve

Ives, that he was applying for short term disability benefits. [Complaint III, *supra* at ¶¶12, 13; Declaration of Steve Ives at ¶13 (Exhibit 2, attached to Defendant's Memorandum, *supra*)]. It is undisputed that Simontacchi was denied short term disability benefits. [Complaint III, *supra* at ¶15; Ives Declaration, *supra* at ¶18]. It is also undisputed that for the six months from January 14, 2003, through July 14, 2003, he received his salary, benefits and a lump sum for accrued vacation. [*Id*.; Ives Declaration, *supra* at ¶15, 16]. During that six month period, even though Plaintiff received his full salary and benefits, he did not work. [*Id.* at ¶16] At the time, Simontacchi's salary was $202,200.00 per year; thus, for a six month period he was paid $101,100.00. [Christianson Declaration, *supra* at ¶18]. And, Simontacchi admits that he was awarded long term disability benefits with an effective date of January 13, 2003. [*Id*.; Complaint II at ¶17; Complaint III at ¶15].

The claim in Simontacchi III is that Plaintiff should have been paid short term disability benefits for the same six month period for which he received his full salary and other benefits, and in addition to the long term disability benefits subsequently awarded to him. [*Id*]. Based on these facts, Plaintiff alleged claims for breach of contract for the Defendant's

failure to award short term disability benefits, declaratory judgment that he was entitled to those benefits, breach of the covenant for good faith and fair dealing, and violations of the North Carolina Wage and Hour Act based on an assertion that the short-term disability payments he claims constitute "wages" within the meaning of the act.

Invensys answered, admitting that Simontacchi was a participant in the Accident & Sickness Plan, but that it only provided "financial assistance for Salaried Exempt employees who are *not able to receive regular compensation* because of non-occupational illness or injury." [Answer III at 7, ¶9 (emphasis provided); Ives Declaration, to which is attached "Accident & Sickness Plan Salaried Exempt Employees, at Plan-0072; Complaint III Exhibit B].

The benefits that Simontacchi would have received under the short term disability benefits plan would have been less than the six months of salary, benefits and accrued vacation which he received. [Answer III at 8, ¶11; Ives Declaration, *supra* at ¶¶8, 9; Simontacchi Affidavit filed October 31, 2007, at ¶6]. The amount of short-term disability payments to which Plaintiff claims to be entitled is $30,307.69,[7] as compared to the regular

---

[7] Plaintiff asserts that the amount of this benefit should be $30,330.00 [Simontachhi Affidavit, *supra* at ¶6] rather than the $30,307.69 stated in the Ives

salary he received for that six month period in the amount of $101,100.00, plus benefits and accrued vacation. [Ives Declaration, *supra* at ¶¶9, 16]. Invensys determined that because Simontacchi received his regular compensation, he was not entitled to short term disability benefits under the plan. [*Id*., at ¶18].

Steve Ives, vice-president of Invensys Human Resources, testified by way of affidavit that in July 2003, Simontacchi began to contact him both in writing and by telephone as to why Simontacchi could not collect short term disability benefits at the same time that he was being paid his full salary and benefits during the six month period from January 14, 2003 through July 13, 2003. [*Id*., at ¶17]. Ives explained to Simontacchi that the short term disability benefits were provided only to individuals who are not receiving their regular compensation. [*Id*., at ¶18]. The Plan at issue defined "compensation" as "[a] Salaried Exempt employee's normal rate based on 40 hours per week." [Ives Declaration, *supra* at Plan-0072].

In opposition to the motion for summary judgment, Simontacchi averred for the first time that he "received severance pay (not regular compensation) in form of salary and benefits for 6 months from 1-14-03

---

Declaration. This difference of $22.31 is not material to the decision in this case.

until 7-14-03 and was left on payroll and not allowed to work[.]" [Simontacchi Affidavit, *supra* at ¶3; *accord*, Plaintiff's Response in Opposition to Defendant's Motion and Memorandum for Summary Judgment, filed July 18, 2007, at 4]. Plaintiff does not state that he received anything less than or different from his normal salary with benefits and accrued vacation for a six month period. [*Id*.]. Nor does he dispute that he received $101,100.00 in salary plus benefits. [*Id*., at ¶6; Response, *supra*., at 5]. And he does not dispute that the amount of short term disability benefits for the same period would have been $30,330.00.[8] [*Id*.]. Simontacchi's averment is that he should have received short term benefits in addition to a lump sum severance package because his original offer of employment in 1995 did not *preclude* both. That offer, however, contains no provision for severance pay. It does, however, contain a provision that notice be given of employment termination. [*Id*. at ¶10, citing Exhibit J, attached to Simontacchi Affidavit, *supra*]. ("Six months notice should we terminate your employment with the request that you provide us the same courtesy."). Exhibit J also refers to a benefits package from Barber

_____

[8] See note 8, *supra*.

Colman.[9] [*Id*.].  As noted *infra*, Simontacchi's short term disability benefits at the time of his termination were through Invensys and Simontacchi does not dispute this fact. [See also, Exhibit K, "Accident & Sickness Plan Salaried Exempt Employees Invensys", attached to Simontacchi Affidavit, *supra*].

On January 14, 2003, after Simontacchi was told that his employment was being terminated, he sent a facsimile to Steve Ives in which he stated:

> I am applying effective today 1-14-03 for short term disability as a full time active employee of Invensys.  This entitles me to full salary and benefits for 180 days.  After 180 days of continuous disability, long term disability benefits become effective.

[Exhibit M to Simontacchi Affidavit, *supra*].[10]  Even though Plaintiff does not dispute that he received his full salary and benefits for six months, after which he was awarded long term disability benefits, he now argues that by keeping him on the payroll with his regular compensation, Invensys made him ineligible for short term disability. [Affidavit, *supra*].

_____

[9]Simontacchi testifies in his Affidavit that the offer letter is signed by Invensys. The letter is actually signed by a vice president of Siebe Control Systems since Invensys was not yet in existence.  Exhibit J, *supra*.

[10]Simontacchi states in his affidavit that he sent the handwritten note via facsimile and Invensys does not dispute the authenticity thereof.  In fact, Invensys included the same document in its submissions.  Christianson Declaration, *supra*, at S-0005.

In contrast to the Affidavit he has submitted in opposition to summary judgment, Simontacchi has attached as an exhibit to his Affidavit a document dated January 23, 2003 in which he stated: "I told [Ives] that the six month notice clause *entitles me to remain on payroll for 6 months with full salary and benefits.*" [Exhibit S to Simontacchi Affidavit, *supra*]. (emphasis provided).[11]  On February 3, 2003, Simontachhi wrote to Ives stating "This means that I would be an active employee during the 6 month period.  Therefore, Invensys also needs to honor this contract and *keep my employment 'active' until July 29, 2003*." [Christianson Declaration, *supra*, Exhibit 1 at S-0007]. Thus, there is no genuine issue under Rule 56 that at the time in question, Simontacchi requested to remain on the payroll and to receive his regular compensation.

In response to Simontacchi's facsimile to Ives, the following information was provided by Ives to Simontacchi:

> You have requested Short Term Disability due to a heart condition. The knowledge of your possible disability and request for Short Term Disability was disclosed to Invensys after you learned of your employment termination date of January 31, 2003, from Invensys on

---

[11]This document is Simontacchi's written summary of a telephone call to Ives. Invensys did not object to it and the Court has considered it as a statement describing the events made while Simontacchi was perceiving them, or immediately thereafter, Fed.R.Evid. 803(1), and admissible against Simontacchi as an admission of a party opponent. Fed.R.Evid. 801.

Tuesday, January 14, 2003.

...

Your doctor, L. Leigh Younce, MD, has recommended that you be "disabled from a cadiovascular standpoint." We request that you have Dr. Younce clarify to what extent this illness would affect your ability to work. Would you be able to attend a desk job and work for a standard work day?

[Christianson Affidavit, *supra,* Exhibit 1 at S-0004]. Ives testified that he never received any further information from Simontacchi's physician. [Ives Declaration, *supra* at ¶14], which Plaintiff does not dispute.

In addition to raising these defenses, Defendant conterclaimed in Simontacchi III alleging Plaintiff further breached the settlement agreement by bringing the common law and statutory claims. In response, Plaintiff argues on this point as well that because the settlement agreement allowed him to pursue a claim for short and long term benefits, he is also allowed to pursue common law claims such as breach of contract, declaratory judgment, breach of the covenant of good faith and fair dealing and violations of the North Carolina Wage & Hour Act. [*Id*., at ¶¶38,39; Plaintiff's Response, *supra*, at 27] ("Plaintiff's STD claims of breach of contract, [and other state law claims] are appropriate Claims since Invensys breached the STD Plan by not awarding Plaintiff STD Benefits[.]").

The claims before the Court on the Defendant's Motion for Summary Judgment are:

A) Plaintiff's claims in Simontacchi III for

　　1) breach of contract for failure to pay short-term disability benefits,

　　2) declaratory judgment regarding Plaintiff's entitlement to the short-term disability benefits,

　　3) breach of covenant of good faith and fair dealing, and

　　4) violation of the North Carolina Wage and Hour Act,

B) Defendant's counterclaim in Simontacchi II for breach of the confidentiality provision in the settlement agreement,

C) Defendant's counterclaims in Simontacchi III for

　　1) unjust enrichment based on Plaintiff's attempt to recover both the STD benefits and his regular salary and benefits for the same six month period,

　　2) breach of the settlement agreement by Plaintiff bringing claims in Simontacchi III that had been released in the settlement agreement, and

　　3) specific performance to enforce the settlement agreement.

As set forth below, the Court concludes that there are no genuine issues as to any material fact on any of these claims and that judgment can be entered as a matter of law, with the exception of the amount of damages, if any, sustained by Defendant as a result of Plaintiff's admitted breach of the settlement agreement.

## STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The burden of establishing that there is no genuine issue of material fact rests with the moving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

> This standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."

Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003) (emphasis in original), quoting  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  A genuine issue exists if a reasonable jury considering the evidence could return a verdict for the nonmoving party.

Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994), *citing* Anderson, 477 U.S. at 248. "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." Bouchat, 346 F.3d at 522, *citing* Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553 (1986).

In considering a motion for summary judgment, the Court must take all of the admissible evidence submitted by the non-moving party as true, and must draw all reasonable inferences in the non-moving party's favor. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986); Anderson, 477 U.S. at 255. To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor. Id. at 248. The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. Id.

Once the moving party presents evidence sufficient to carry its burden under Rule 56, the non-moving party may not rest upon its pleadings, but must affirmatively set forth, by affidavits or otherwise, "specific facts showing that there is a genuine issue for trial." Fed. R. Civ.

P. 56(e).  An entry of summary judgment is mandated if, "after adequate time for discovery and upon motion, [the non-moving party] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  In reviewing the evidence, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson, 477 U.S. at 251-52.

The Plaintiff appears in this matter *pro se*.  This, however, does not relieve the Plaintiff of his responsibility to respond to the Defendant's Motion for Summary Judgment in accord with the Rule of Civil Procedure. On the contrary, the Plaintiff's burden is the same as though he were represented by counsel.  Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).  Plaintiff has been advised by the court of his obligations under Roseboro, and Plaintiff has made an attempt to respond, even though the responses are, in large measure arguments which Plaintiff has submitted under oath, along with substantial documentation reflecting the prior actions of the parties.

> Although a pro se litigant's pleadings are to be construed
> liberally and held to a less stringent standard than formal

23

pleadings drafted by lawyers, *this court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants*. Thus, although we make some allowances for the pro se plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements, *the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record*.

Garrett v. Selby Connor Maddux & Janer, 425 F.3d 836, 840 (10th Cir. 2005) (emphasis added). As such, the Court takes the record presented on the Motion for Summary Judgment and applies the law to the facts.

## ANALYSIS

**Plaintiff's Claim for Short-Term Disability Benefits**

Plaintiff asserts that he is entitled to short-term disability benefits for the period of January 14, 2003, through July 13, 2003, pursuant to a contractual obligation that Defendant had to Plaintiff arising from his employment. He bases this claim exclusively upon the "Accident & Sickness Plan - Salaried Exempt Employees" that Plaintiff made an exhibit to Complaint III (The Plan). [Complaint III, ¶6]. Defendant apparently concedes that this Plan was in effect for the period in question, and that it is bound by its terms.[12] [Ives Declaration at ¶¶6-18].

_____

[12] While it is questionable, based on the forecast of evidence presented by Plaintiff, that this Plan gives rise to any contractual obligations on the part of Defendant

"Where the language of a contract is plain and unambiguous, the construction of the agreement is a matter of law; and the court may not ignore or delete any of its provisions, nor insert words into it, but must construe the contract as written, in the light of the undisputed evidence as to the custom, usage and meaning of its terms." B. Elliott Enterprises v. Mitchell, _____ N.C. App. ___, 643 S.E.2d 82 (2007), quoting Hemric v. Groce, 169 N.C. App. 69, 76, 609 S.E.2d 276, 282, disc. rev. denied, 359 N.C. 631, 616 S.E.2d 234 (2005). The document on which Plaintiff relies the Court as setting forth the terms of the contract for short-term disability benefits is the Plan document. That document specifically states that

> Invensys Building Systems has established an Accident & Sickness Plan to provide financial assistance for Salaried Exempt employees *who are not able to receive regular compensation* because of non-occupational illness or injury.

[The Plan, ¶1.1] (emphasis added).

It is not disputed, however, that for the period of January 14, 2003, through July 13, 2003, that Defendant paid Plaintiff his full salary and

---

or any contractual entitlement on the part of Plaintiff, since the Defendant concedes that it is bound by the terms of the Plan, the Court will not address this issue. Regarding any question as to whether a claim for entitlement to benefits under a short-term disability plan would be preempted by ERISA, Defendant concedes that "plaintiff's claims are not preempted by ERISA." [Memorandum in Response to Court's Order Requesting Explanation of the ERISA Preemption Issue (Doc. 49) at 5]. Based on these two concessions, the Court analyses the short term disability claim as a contract claim.

benefits.  As such, Plaintiff was "able to receive regular compensation,"
and thus ineligible for the short-term disability payments.  The language of
this provision is undeniably clear.

In response, Plaintiff makes a very creative argument that he
"received severance pay (not regular compensation) in form of salary and
benefits for 6 months from 1-14-03 until 7-14-03 and was left on payroll
and not allowed to work." [Simontacchi Affidavit at ¶3].  It is first noted that
this characterization of the payment as "severance pay" is made by Plaintiff
for the first time in opposition to the motion for summary judgment and is in
direct conflict with Plaintiff's own prior statements in his letters of January
23, 2003 [Simontacchi Affidavit Ex. S] and February 3, 2003 [Christianson
Declaration Ex.1 at S-0007] that he was entitled to six months of regular
pay plus benefits.  "[A] party against whom summary judgment is sought
cannot create a jury issue by identifying [or creating] discrepancies in his
own account of the facts."  Spriggs v. Diamond Auto Glass, 242 F.3d 179,
186 n.7 (4th Cir. 2001), *citing* Rohrbough v. Wyeth Laboratories, Inc., 916
F.2d 970 (4th Cir. 1990); Hernandez v. Trawler Miss Vertie Mae, 187 F.3d
432, 438 (4th Cir. 1999).

Giving Plaintiff the benefit of the doubt, it appears that he is arguing

that though he received his regular salary he did not receive it *as* "regular compensation," and therefore the condition precedent to eligibility for short-term disability benefits has been met. This argument must fail, however, for two reasons. First, Plaintiff's argument is one of form over substance. From January 14, 2003, through July 14, 2003, Plaintiff received a periodic paycheck in the same amount and at the same intervals as he had previously. As Plaintiff admits in his Affidavit, he was "left on payroll." He was receiving the same compensation with exactly the same regularity that he was prior to that date. Even if the payment had been converted to some sort of "severance pay" for that period, such periodic severance pay would still be "regular compensation." Plaintiff is unable to point the Court to any language in the Plan document that would indicate or imply a different construction of this provision.

Second, Plaintiff presents no evidence that he was paid any amount as "severance pay." In fact, in his Memorandum in Opposition to the Motion for Summary Judgment, Plaintiff argues the contrary. He specifically argues that he "should have been given a lump sum severance package of salary and benefits for six months." [Memorandum at ¶10]. If he "*should have been*" paid severance pay, it necessarily implies that he

*was not* paid severance.

Moreover, Plaintiff has not presented any forecast of evidence that he was entitled to any severance pay. He points to his "October 6, 1995 Contract" which is actually a letter dated September 20, 1995, with an addendum dated October 5, 1995, offering a position of employment, which Plaintiff accepted and signed on October 6, 1995. The addendum includes a term that reads "We will also provide the following: . . . 8. Six months notice should we terminate your employment with the request that you provide us the same courtesy." [Exhibit J to Plaintiff's Response]. The plain meaning of this term is that the parties agreed to a mutual obligation to provide the other party with six months notice of termination.[13] As such, when Defendant informed Plaintiff on January 14, 2003, that his employment was being terminated, Plaintiff had the right for that termination to be effective six months hence, namely July 14, 2003. This is precisely consistent with the Defendant paying Plaintiff his regular salary and furnishing his regular benefits for that six month period. There is no genuine issue of fact as to this.

---

[13] This letter agreement is between Plaintiff and Siebe. Plaintiff presents no forecast of evidence that this agreement would be binding on Defendant, but once again Defendant does not contest this point. As such, the Court will treat this letter agreement as though it were between Plaintiff and Defendant.

There is no dispute in the evidence before this Court that the payments Plaintiff received from January 14, 2003, through July 14, 2003, were "regular compensation" within the meaning of the Accident & Sickness Plan.  It is, therefore, undisputed that a condition precedent to Plaintiff's entitlement to short-term disability benefits has not been met.  As such, the Plaintiff is entitled to no short-term disability payments under the terms of this Plan.

The Plan also states that "Participants and beneficiaries shall not be entitled to challenge the Plan Administrator's determinations in judicial or administrative proceedings without first complying with the procedures in this Article." [Plan ¶4.1f].  It is undisputed, however, that after Plaintiff submitted a very vague letter from his physician regarding Plaintiff's claimed disability, that the Vice President for Human Resources wrote to Plaintiff stating "We request that you have Dr. Younce [sic] clarify to what extent this illness would affect your ability to work.  Would you be able to attend a desk job and work for a standard work day?" [Ives Declaration at ¶14, and Letter from Ives to Simontacchi, January 23, 2003, at S-0004 attached thereto].  It is likewise not disputed that "Mr. Simontacchi never complied with this request." [Id. at ¶14].  Instead, Plaintiff attempts to rebut

this evidence with an argument included in his Affidavit that

> Dr. Leigh Younce wasn't my physician on January 23, 2003 but she referred me to Dr. Frank in 1st quarter 2002. Enclosed Exhibit L dated 1-14-03 clearly shows that Dr. Frank was my physician. . . . Defendant Steve Ives [sic] should have communicated directly with Dr. Frank to obtain additional information in order ro approve STD [short-term disability] benefits and Mr. Ives never did contact Dr. Frank even though he had all of the necessary contact information.

[Simontacchi Affidavit at ¶9]. Apparently Plaintiff simply assumed that it was Mr. Ives' responsibility to seek out the information necessary to support Plaintiff's claim. The Plan, however, lists among the Plan Administrator's obligations the requirement that he provide the claimant with "a description of any additional material or information necessary *for the claimant to perfect the claim*." [Plan at ¶4.1.b] (emphasis added). It is clear that it was Plaintiff's responsibility, under the terms of the Plan, to provide the medical information from Dr. Frank when it was requested. Plaintiff's admitted failure to do so based on his misplaced expectation that the Plan Administrator would seek out the information for him is fatal to this claim.

Lastly, Plaintiff makes the curious argument that "There are no restrictions in either my October 6, 1995 Contract (offer letter) . . . or the STD [short-term disability] Plan that prevents Mr. Simontacchi [sic] from

receiving both STD benefits and the 6 month severance for salary, bonus and benefits. The fact that the agreement does not *prevent* the payment of both short-term disability benefits and salary does not *entitle* Plaintiff to both payments. In fact, the Plan document is clear that receipt of "regular compensation" for those six months makes Plaintiff ineligible for the short-term disability payments.

Plaintiff has presented no forecast of evidence that he has a contractual entitlement to received short-term disability benefits. He was not qualified because he was receiving his "regular compensation," and he failed to provide the medical information requested in order to make the claim. As such, Plaintiff's contract claim for such short-term disability benefits must fail as a matter of law.


### *Res Judicata*

The issue is also presented to this Court as to what effect the conclusion of Simontacchi I (3:03cv442) has upon the Plaintiff's ability to pursue this case. In Simontacchi I the Plaintiff brought suit alleging breach of his employment contract. [Complaint I]. That action was subsequently concluded by the filing of a document entitled "Stipulation of Voluntary

Dismissal With Prejudice," which read in pertinent part " Now Comes Plaintiff, John F. Simontacchi, through counsel, pursuant to Rule 41 of the Federal Rules of Civil Procedure, and hereby *dismisses* the Complaint against the Defendants in this matter *with prejudice*." (Emphasis added). Despite the odd wording of the document,[14] this is a stipulation of dismissal with prejudice. The question is whether this dismissal with prejudice bars the Plaintiff's claims herein by operation of the doctrine of *res judicata*.

Federal law controls the preclusive effect of an earlier federal judgment.[15] Harnett v. Billman, 800 F.2d 1308, 1313 (4th Cir. 1986), *cert. denied*, 480 U.S. 932 (1987). The Stipulation of Dismissal in the Simontacchi I constitutes an adjudication on the merits as between Simontacchi and Invensys. *Id*, at 1312; Astron Industrial Associates, Inc. v. Chysler Motors Corp., 405 F.2d 958 (1968); Howard v. Brim, 2006 U.S. Dist. Lexis 37956 at 12-13 (WDNC 2006); See also, Orca Yachts, L.L.C. v. Mollicam, Inc., 287 F.3d 316, 319 (4th Cir. 2002).

"Under *res judicata*, a final judgment on the merits bars further claims

---

[14] It appears to be a form for a state court voluntary dismissal that has been slightly modified to comply with Federal Rule 41.

[15] This is not to be confused with the preclusive effect of a judgment rendered by a state court, which pursuant to the Full Faith and Credit Clause must be governed by the law of the state. Graves v. Associated Transport, Inc., 344 F.2d 894, 896 (4th Cir. 1965); In re McNallon, 62 F.3d 619, 624 (4th Cir. 1995).

by parties or their privies based on the same cause of action." It is well established in this circuit that the application of *res judicata* requires a showing of the following three elements: "(1) a final judgment on the merits in an earlier suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits."

...

[T]wo causes of action are the same if "the new claim arises out of the same transaction or series of transactions as the claim resolved by the prior judgment."

Young - Henderson v. Spartanburg Area Mental Health, 945 F.2d 770, 773-74 (4th Cir. 1991), *quoting* Montana v. United States. 440 U.S. 147, 153, 99 S.Ct. 970, 973 (1979); Nash County Bd. Of Educ. v. Biltmore Co., 640 F.2d 484, 486 (4th Cir.), *cert. denied* 454 U.S. 878, 102 S.Ct. 359 (1981).

The Stipulation of Dismissal filed in Simontacchi I (3:03cv442) is an adjudication on the merits and the parties are identical. Young-Henderson, *supra*. There is also an identity of the causes of action between Simontacchi I and the present claims. In both the Plaintiff alleges the breach of his employment contract by the Defendant. In fact, the present suit reflects the Plaintiff's *pro se* attempt to mirror his prior counsel's pleading of the claim. In Simontacchi I the Plaintiff presents four claims 1) 1) breach of the employment contract by failure to pay him sums he was

due, 2) declaratory judgment that he was entitled to the sums he claimed, 3) breach of the covenant of good faith and fair dealing and 4) violation of the Wage & Hour Act. [Complaint I]. In the present case Plaintiff brings four causes of action, 1) breach of the employment contract by failure to pay him sums he was due, 2) declaratory judgment that he was entitled to the sums he claimed, 3) breach of the covenant of good faith and fair dealing and 4) violation of the Wage & Hour Act. [Complaint III]. The Plaintiff creatively attempts to identify a different breach from the ones previously alleged, but that misses the point. The first case pertained to Plaintiff's claim that he was not paid all to which he was entitled under his employment contract, and the present case presents exactly the same claim only dressed slightly differently. They "arise[] out of the same transaction or series of transactions as the claim resolved by the prior judgment." Young-Henderson, *supra*. Thus, the dismissal in that action "bars litigation not only of every matter actually adjudicated in the earlier case, but also of every claim that might have been presented."[16] *In re*

---

[16]As previously noted, the documents cited *infra* show that by the time Simontacchi signed the settlement agreement in November 2004, he knew his claim for short term benefits had been denied. While the settlement agreement allowed him "to pursue" any administrative remedies in connection with that claim, it barred any state law claims. Thus, at the time Simontacchi settled that lawsuit, he released "every claim that might have been presented." The Court rejects Simontacchi's attempt to bootstrap

<u>Varat Enterprises, Inc.</u>, 81 F.3d 1310, 1315 (4th Cir. 1996).

Plaintiff argues that the Settlement Agreement & Release specifically excepts from the release language his claim pertaining to short-term disability benefits. This misses the point on two counts. First, in making this argument by referring only to the short-term disability claim and not the good faith and Wage and Hour claims, Plaintiff appears to concede that his claims herein for breach of the covenant of good faith and fair dealing and under the Wage and Hour Act were not preserved. More importantly, Plaintiff's argument completely misses the point of the application of *res judicata*. It is not the preclusive effect of the *release* that causes the Plaintiff's claims to fail; it is the preclusive effect of the prior *Stipulation of Dismissal* that bars this action. That document says nothing whatsoever about excepting Plaintiff's claim for short-term disability benefits. It states that it is a "Dismissal With Prejudice." That constitutes a judgment on the merits as to any breach that Plaintiff claims to have arisen from his employment transaction with the Defendant.

The Court therefore concludes that Plaintiff's claims asserted in this consolidated action are barred by the doctrine of *res judicata*, and the

---

claims for breach of contract, *etc.* based on the narrow exception in the settlement agreement of his right "to pursue" his short term benefits claim.

Defendant is entitled to judgment as a matter of law on these issues.

**The Settlement Agreement & Release**

Two of the claims asserted herein by the Plaintiff are claims for breach of the covenant of good faith and fair dealing and for violation of North Carolina's Wage and Hour Act. [Complaint III].  The Settlement Agreement & Release signed by Plaintiff on November 9, 2004, which resolved Simontacchi I expressly and unequivocally includes language that Plaintiff was releasing the Defendants therein and all their affiliates from all claims, and specifically included "all claims arising out of his employment with Defendants, all claims for breach of express or implied contract or *covenant of good faith and fair dealing*, . . . all claims for violation of North Carolina statutory and common law, . . . the *North Carolina Wage and Hour Act*." (Emphasis added).  The only exceptions to the release conerned the pursuit of two claims: Simontacchi's application for short term benefits and his application for long term benefits.  At the time that Simontacchi entered into this settlement agreement, he had unsuccessfully applied for short term benefits and successfully applied for long term benefits.

A release is a private agreement amongst parties which gives up or abandons a claim or right to the person against whom the claim exists or the right is to be enforced or exercised." [The North Carolina] Supreme Court has described the effect of a settlement and release as follows:

A completed compromise and settlement fairly made between persons legally competent to contract and having the authority to do so with respect to the subject matter of the compromise, and supported by sufficient consideration, operates as a merger of, and bars all right to recover on, the claim or right of action included therein, as would a judgment duly entered in an action between said persons.

Financial Services of Raleigh, Inc. v. Barefoot, 163 N.C.App. 387, 392-93, 594 S.E.2d 37, 41 (2004), *quoting* Jenkins v. Fields, 240 N.C. 776, 778, 83 S.E.2d 908, 910 (1954).  Simontacchi, who was represented by counsel in Simontacchi I (3:03cv442), does not dispute that he was legally competent to enter into the settlement agreement or that there was sufficient consideration to support it.  "When a release is executed in exchange for valuable consideration, the release provides a complete defense to an action for damages."  VF Jeanswear Ltd. Partnership v. Molina, 320 F.Supp.2d 412, 418-19 (M.D.N.C. 2004), *citing* Talton v. Mac Tools, Inc., 118 N.C.App. 87, 90, 453 S.E.2d 563, 565 (1995).  The release in Simontacchi I was broadly written to bar any claim of any type with the narrow exception of the right "to pursue" the two claims for short term

and/or long term disability benefits.  <u>Talton</u>, *supra*. ("[T]his language was broad enough to cover all possible causes of action, whether or not the possible claims are all known[.]").  The language of the exception clearly states a right "to pursue a claim" for benefits; that is, the right to apply for and attempt to obtain short and long term benefits.  The language does not include the right to pursue claims for breach of a covenant of good faith and fair dealing, violations of the Wage & Hour Act, or any other common law or statutory claims because Simontacchi released Invensys as to all such claims.  *See, e.g.*, <u>McNair v. Goodwin</u>, 262 N.C. 1, 8, 136 S.E.2d 218, 223 (1964) ("the plain provisions of the release are sufficient to bar any manner of claim or action[.]); <u>Financial Services</u>, *supra*. ("Here, 'the topic of dispute' or 'the thing in dispute' in the settled litigation ... encompasses 'all claims of any kind arising out of'" the settled action.); <u>Coakley & Williams Const., Inc. v. Structural Concrete</u>, 973 F.2d 349 (4th Cir. 1992).  Thus, the claims raised by Simontacchi for breach of the covenant of good faith and under the Wage and Hour Act must be dismissed because he released all such claims.

Simontacchi argues that one paragraph of the settlement agreement supports his position: "The *payment* to Simontacchi ... is for the settlement

of all of Simontacchi's claims in the Lawsuit *that relate to disputed bonuses and compensation which were claimed to be owed to Simontacchi*[.]" [Settlement Agreement, Defendant's Memorandum, *supra*, Ex.3 at I 0005] (Emphasis added). The argument is unavailing. Although the *payment* to Simontacchi may have related to the disputed bonuses and compensation, Simontacchi raised other claims in the complaint, such as breach of covenant of good faith and fair dealing and the Wage & Hour Act. The wording of the agreement merely clarified that the payment was made solely in connection with any claims for bonuses and compensation; that is, Invensys made no payment in connection with Simontacchi's other claims. Nor does this language in any manner limit the broad wording that Simontacchi released any and all claims of any kind, with the narrow exception of the right "to pursue" the short and long term disability claims. Financial Services, *supra*.

In the face of this unambiguous language it is difficult for the Court to see how at least portions of the Plaintiff's claims in this action are not frivolous and in violation of Rule 11 of the Federal Rules of Civil Procedure. For this reason the Court will enter an Order pursuant to Rule 11(c)(1)(B) directing that the Plaintiff appear at the final pre-trial conference,

scheduled in this matter for January 31, 2008, and show cause as to why he should not be sanctioned for his actions herein of asserting the claims identified above in direct contravention of the express release language that he previously signed.

**Invensys' counterclaims for breach of contract.**

Invensys has alleged that Simontacchi breached the settlement agreement by disclosing the terms and amount of the settlement and by bringing suit based on common law claims.  Simontacchi does not deny that he disclosed the settlement terms and amount.  "Plaintiff didn't breach the parties' settlement agreement by disclosing in his Complaint the settlement payment he received."  Simontacchi Affidavit, *supra*, at ¶37.  And, the Complaint clearly shows that Simontacchi did, in fact, make such a disclosure in the Complaint itself.

> In addition to the commissions paid in 2001 of $70,347 and in 2002 of $25,275, there was a commission due in 2001 from the contract dated January 7, 1999 per Exhibit B of 50% of salary ($101,100) since Invensys made the decision in 2001 to leave [Robertshaw] alone (not sell) due to improved profitability and growth opportunities. Simontacchi received a settlement from Invensys of $95,000 on November 16, 2004 for claims that relate to disputed compensation from Exhibit B.

Complaint II at ¶25.

Simontacchi's only response to Invensys' motion for summary judgment on this point is that he was entitled to make this disclosure because the claims for short and long term disability were excepted from the release. However, his argument ignores the plain language of the Settlement Agreement & Release:

> The parties agree to keep *the fact, amount, and terms of this settlement in strict confidence*, unless and only to the extent they have been authorized by this Agreement or otherwise in writing by the other parties to make disclosure. *The Parties, may, if specifically asked about the dispute, state it was resolved, but the Parties shall not further characterize the settlement or the claims that were the subject of this Agreement*.
>
> ...
>
> The Parties further agree not to disclose this document, its contents or subject matter to any person other than to their lawyers, accountants, spouses, income tax preparers, or the executor(s) of that party's will, except pursuant to written authorization by the other parties or as compelled by law or a court of competent jurisdiction. ... This Agreement may be used as evidence in any subsequent proceeding alleging a breach of this Agreement.

Document 47-17, attached to Plaintiff's Response, *supra*.

In addition, as discussed *infra*, by the language of the settlement agreement Plaintiff clearly released any common law claims and Wage and Hour claims which he has raised in these consolidated cases. Plaintiff does not dispute that he brought such claims; he merely argues that they fall within the parameter of the reserved causes for disability benefits. For

41

the reasons stated above, the Court rejects this attempt to bootstrap additional claims in order to circumvent the plain language of the settlement agreement.

"The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." Poor v. Hill, 138 N.C.App. 19, 26, 530 S.E.2d 838, 843 (2000).  It is undisputed that the settlement agreement is a valid contract.  By disclosing the terms and amount of the settlement and bringing additional lawsuits on claims which he released, Simontacchi materially breached the settlement agreement. Long v. Long, 160 N.C.App. 664, 668, 588 S.E.2d 1, 4 (2003) (A breach is material if it is "one that substantially defeats the purpose of the agreement or goes to the very heart of the agreement, or can be characterized as a substantial failure to perform.").  The determination of whether a breach is material is a question of law for the Court.  Id.  Bringing additional lawsuits against Invensys on claims that had been released defeated a substantial purpose of the settlement and release.  Disclosing the terms and amount of the settlement went to the heart of the confidentiality clause and defeated its purpose.

Invensys has shown that there is no genuine issue of material fact on

its counterclaims for breach of contract. Thus, the only issue is that of damages, which issue will remain for trial.

**Remaining causes of action.**

Because the Court has dismissed Plaintiff's claim for short term disability benefits, Defendant's counterclaim for unjust enrichment is moot and will be dismissed.

As part of its counterclaims alleging that Plaintiff has breached the settlement agreement by filing some of the claims herein, Invensys seeks "an order compelling Simontacchi to abide by the terms of the Parties' [settlement] Agreement." Defendant's caption of this claim denominates it as one for specific performance. "Specific performance is used to compel a party to meet his contractual obligations[.]" Mizell v. Greensboro Jaycees-Greensboro Jr. Chamber, 105 N.C.App. 284, 289, 412 S.E.2d 904, 908 (1992). Defendant, however, makes no allegation that it has no adequate remedy at law for Plaintiff having filed these claims in breach of the agreement. In fact, Defendant seeks a legal remedy for such breach in the form of dismissal of the offending claims. Where there is an adequate remedy at law, equitable relief is not available. Pelham Realty Corp. v.

<u>Board of Transportation</u>, 303 N.C. 424, 279 S.E.2d 826 (1981); <u>In re Matter of Campbell</u>, 155 N.C. App. 441, 573 S.E.2d 550 (2002).  Defendant's claim for specific performance is therefore dismissed.

Invensys' motion for summary judgment has disposed of all of Plaintiff's claims in both Simontacchi II and Simontacchi III, except the ERISA claim relating to long term disability benefits.  In that action, Plaintiff claims that because his bonuses were not included in the definition of "covered earnings," his disability benefits have been improperly calculated. The parties have not addressed the point of whether this issue pertaining to bonuses is precluded by the terms of the settlement agreement.  As a result, the Court will provide the parties a limited opportunity to address this issue.  The parties have also not addressed whether the Stipulation of Dismissal on Simontacchi I has a preclusive effect on Plaintiffs ERISA claim.  The parties will be allowed a limited opportunity to address this issue as well.

In response to the Defendant's counterclaims in Simontacchi III, Plaintiff filed what he denominated "Counterclaims."  These generally appear to be revised statements of the contract claims Plaintiff brings in Simontacchi III, but also include claims for malicious use of process and

abuse of process.  No counterclaim in response to a counterclaim is allowed under FRCP Rule 7(a).  As such, the Court will treat this "Counterclaim" as a Motion to Amend under Rule 15.  In light of the fact that Plaintiff has done nothing to advance these proposed amendments, and in light of the fact that this matter is past its motions deadline and is ripe for trial, the Court in its discretion will deny the Motion to Amen, and based thereon will dismiss these "Counterclaims."

## ORDER

**IT IS, THEREFORE, ORDERED** that Invensys' motion for summary judgment is hereby **GRANTED IN PART AND DENIED IN PART** as follows:

1.  Plaintiff's claims brought in 3:06cv52 for short term disability benefits, breach of contract, declaratory judgment, breach of the covenant of good faith and fair dealing and violations of the North Carolina Wage and Hour Act are hereby **DISMISSED WITH PREJUDICE**.

2.  Plaintiff's purported "counterclaims" brought in 3:06cv52 for breach of contract, specific performance, malicious use of process and abuse of process are hereby **DISMISSED WITH PREJUDICE**.

3. Defendant's Motion for Summary Judgment on its counterclaim brought in 3:05cv283 for breach of contract is hereby **GRANTED** as to this issue of liability, but is **otherwise DENIED**, and the issue of damages is set for trial in the February 11, 2008, Term.

4. Defendant's Motion for Summary Judgment on its counterclaim brought in 3:06cv52 for breach of contract is hereby **GRANTED** as to this issue of liability, but is **otherwise DENIED**, and the issue of damages is set for trial in the February 11, 2008, Term.

5. Invensys' counterclaim in 3:06cv52 for unjust enrichment is hereby **DISMISSED** as moot in light of the dismissal of the Plaintiff's claim for short term disability benefits.

6. Defendant's counterclaim for specific performance is hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that on or before January 28, 2008, the parties shall advise the Court in writing not to exceed ten double spaced pages in size 14 font whether that portion of Plaintiff's ERISA claim for long term benefits which is based on a calculation of his covered earnings as including bonuses is prohibited by the settlement agreement, and whether the Stipulation of Dismissal in Simontacchi I precludes Plaintiff's ERISA

claim.

**IT IS FURTHER ORDERED** that the Plaintiff shall appear at the final pre-trial conference in this matter on January 31, 2008, and shall show cause as to why he should not be sanctioned pursuant to Rule 11 of the Federal Rules of Civil Procedure for the reasons set forth in this Order.

**IT IS FURTHER ORDERED** that the Plaintiff's "Motion to Court's Request on Issue of Preemption," is hereby **DENIED**.

**IT IS FURTHER ORDERED** that the Plaintiff's ERISA claim for long-term disability benefits is hereby **SEVERED** and will be ruled on by separate Order.

Signed: January 11, 2008

Martin Reidinger
United States District Judge