**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

**CIVIL CASE NO. 3:05cv283
[ERISA]**

| | | |
|---|---|---|
| JOHN F. SIMONTACCHI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM OF DECISION** |
| | ) | **AND ORDER** |
| INVENSYS, INC., | ) | **AS TO ERISA CLAIM** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Defendant's Motion for

Summary Judgment [Doc. 33]. A portion of that Motion pertains to the

Plaintiff's claims pursuant to the Employee Retirement Income Security Act

(ERISA), 29 U.S.C. §1001, *et. seq.*, for long term disability benefits. That

ERISA claim was severed from the contract claims of the Plaintiff and the

counterclaims of the Defendant by previous order of this Court. [Doc. 53].

That separate ERISA claim is addressed herein.

**PROCEDURAL HISTORY**

On May 19, 2005, John F. Simontacchi (Simontacchi), acting *pro se*,

filed a Complaint in the General Court of Justice, Superior Court Division, Mecklenburg County against Invensys, Inc. (Invensys) pursuant to ERISA. [Doc. 1 at 7]. Invensys thereafter removed the action to this Court based on federal question jurisdiction. [Doc. 1]. Invensys answered and asserted a counterclaim. [Doc. 2]. After Simontacchi was allowed to amend his Complaint, Invensys amended its Answer and Counterclaim. [Docs. 6, 8, and 9].

On February 13, 2007, Hon. Graham C. Mullen, the judge then presiding over this matter, ruled that the proper standard of review in this case is *de novo* review. [Doc. 28]. He also determined that any review was limited to evidence which was presented to the Plan Administrator. [Id.]. Despite this ruling, Simontacchi moved on July 2, 2007 for consideration of evidence outside the administrative record. [Doc. 35].

On July 2, 2007, Invensys moved for summary judgment. [Doc. 33]. While the Motion for Summary Judgment was pending, the case was reassigned to the undersigned on September 19, 2007. On October 23, 2007, the undersigned provided notice to Simontacchi, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), of the burden he faced as a *pro se* litigant in responding to a motion for summary judgment and

provided him with an additional opportunity to respond. [Doc. 46]. In response to that Order, Simontacchi filed an affidavit and exhibits. [Doc. 47].

On January 11, 2008, the undersigned denied Simontacchi's motion to present evidence outside the record. [Doc. 51]. On that same date, the undersigned severed the ERISA claim from the consolidated action and disposed of Invensys' counterclaim.[1] [Doc. 53]. The issues presented in the Motion for Summary Judgment regarding the claim for long term disability benefits under ERISA are now ripe for disposition.

## STANDARD OF REVIEW

As noted, Judge Mullen has determined that *de novo* review is the appropriate standard of review in this case. "The law of the case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" United States v. Lentz, 524 F.3d 501, 528 (4th Cir. 2008), *cert. denied* __ U.S. __, 2008 Lexis 6161 (2008)(citations omitted); United States v. Conyers, 2008 WL 2705666 **1 (4th Cir. 2008) ("The law of the

---

[1]Thereafter, Simontacchi retained counsel; however, counsel did not move for leave to supplement the response to the motion.

case doctrine, absent exceptional circumstances, forecloses relitigation of issues expressly or impliedly decided at a prior stage of a proceeding."), *citing* United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993).

When the *de novo* standard is the proper standard of review in an ERISA case, it applies to all aspects of the denial of the claim, including fact issues. Muller v. First Unum Life Ins. Co., 341 F.3d 119, 124 (2nd Cir. 2003) (*de novo* review of the parties submissions on paper and the record before the administrator). This case is presented to the Court in the procedural posture of a motion for summary judgment, as is often the case in ERISA actions. Id.; Bynum v. Cigna Healthcare of North Carolina, Inc., 287 F.3d 305, 311 n.14 (4th Cir. 2002) (noting that ERISA cases are normally submitted as motions for summary judgment rather than as bench trials); Palm v. Wausau Benefits, Inc., 2007 WL 927617 (D.Md. 2007) (noting that in an ERISA case involving a *de novo* standard, the case is a hybrid of Rule 56 principles combined with the court acting as finder of facts), *citing* Neumann v. Prudential Ins. Co. of America, 367 F.Supp.2d 969 (E.D.Va. 2005).[2] "[T]here are ERISA §1132(a)(1)(B) claims that involve no disputes of material fact, but merely a dispute over whether the

---

[2]Thus, in an abundance of caution, the Court finds the facts specially and states conclusions of law separately. Fed.R.Civ.P. 52(a)(1).

undisputed facts are sufficient to trigger benefits under a plan's disability [provisions]." Neumann, 367 F.Supp.2d at 980. Thus, the Court will review the facts as shown in the administrative record to ascertain whether the case presents any genuine issues of material fact. If not, then the case can be be resolved on summary judgment. Otherwise, the case will be disposed of under a hybrid of Rule 56 principles combined with the court acting as the finder of fact. To the extent that Rule 56 applies to the disposition of this case, the standard is as follows.

> Under the Federal Rules of Civil Procedure, summary judgment shall be awarded "if the [administrative record] show[s] there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." As the Supreme Court has observed, "this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."

Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003) (emphasis in original).

A genuine issue of fact exists if a reasonable jury considering the evidence could return a verdict for the nonmoving party. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994), *certiorari denied* 513 U.S. 814, 115 S.Ct. 68, 130 L.Ed.2d 24 (1994), *citing* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Regardless of

whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." Bouchat, 346 F.3d at 522, *citing* Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If this showing is made, the burden then shifts to the non-moving party who must convince the Court that a triable issue does exist. Id.

A party opposing a properly supported motion for summary judgment

"may not rest upon the mere allegations or denial of [his] pleadings," but rather must "set forth specific facts showing that there is a genuine issue for trial." Furthermore, neither "[u]nsupported speculation," nor evidence that is "merely colorable" or "not significantly probative," will suffice to defeat a motion for summary judgment; rather, if the adverse party fails to bring forth facts showing that "reasonable minds could differ" on a material point, then, regardless of "[a]ny proof or evidentiary requirements imposed by the substantive law," "summary judgment, if appropriate, shall be entered."

Id.

Nonetheless, in considering the facts for the purposes of a summary judgment motion, the Court will view the pleadings and material presented in the light most favorable to the nonmoving party. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## FACTS AS SHOWN BY THE ADMINISTRATIVE RECORD

In October 1995, Simontacchi was hired to be the vice president and general manager of Barber-Colman Industrial Instruments, [Doc. 34-2 at ¶14], which was then a division of Barber-Colman Company and a subdivision of Siebe Control Systems. [Doc. 24-5 at S0141]. On December 22, 1998, Simontacchi was assigned to the position of vice president and general manager of Robertshaw Industrial Products Division, which at that time was part of the FM&C Division of Siebe Intelligent Automation. [Id.; Doc. 34-4 at S 0061]. Although assigned to Robertshaw, Simontacchi remained an employee of Barber-Colman Industrial Instruments for purposes of salary and benefits. [Id., at S 0062]. In January 1999 Invensys was created by the merger of Siebe and some company that is not identified in the record. [Doc. 1 at 8]. On December 19, 1999, the Barber-Colman Company, which remained a subdivision of the merged corporation, became Invensys Building Systems, Inc. [Doc. 34-5 at S 0141].

In 2001, Robertshaw Industrial Products Division was transferred into the Invensys Controls Division. [Id.]. At that time, Simontacchi was given the option of receiving his salary and benefits through Invensys Building

Systems, Inc. or formally transferring to Robertshaw Controls Company.[3]

[Id.]. The administrative record shows that the option was provided to

Simontacchi at his request so that he could participate in the more

advantageous retirement plan offered by Invensys Building Systems, Inc.

[Id.]. On October 31, 2001, Simontacchi completed an Invensys Group

Benefits Plan Enrollment/Change Form pursuant to which he elected to

participate in long term disability benefits coverage through "Invensys, Inc.

- Controls" with account number 2452185, locator code NILLI.[4] [Doc. 34-5

at S 0112-0113]. His election became effective on January 1, 2002. [Id.].

It is undisputed that Simontacchi did not change his election at any time

thereafter. [Doc. 34-3 at S 0014].

The Invensys long term disability benefits plan (Plan) is an employee

_____

[3] Both Invensys Building Systems, Inc. and Robertshaw Controls Company were subdivisions of Invensys Control Systems Division, i.e. Invensys-Controls. [Doc. 34-3 at Plan 0066-67].

[4] In response to the Motion for Summary Judgment, Simontacchi argued in his brief that he never requested to be payrolled and to receive benefits through Invensys Building Systems. [Doc. 40 at 18]. In the affidavit which he submitted to oppose summary judgment, however, he does not make such a sworn statement, [Doc. 47], nor does he present any evidence to support his argument. Whether or not Simontacchi made such a request the enrollment form signed by him clearly shows that he enrolled in the long term benefits plan of Invensys Control Systems of which Invensys Building Systems was a subdivision. Thus, there is no genuine issue of material fact as to this issue. Out of an abundance of caution, however, the Court finds as fact that the enrollment form shows Simontacchi's election to participate in the Invensys Control Systems benefits plan.

welfare benefit plan covered under ERISA. [Doc. 34-2 at Plan 0023-0024].
The Plan is sponsored by Invensys and the Plan Administrator is the
Invensys Employee Benefits Committee (Committee). [Id.].  The Plan is
administered by the Committee and a Claims Administrator. [Id.].  The Plan
recites that the Committee has "broad authority to determine the status and
rights of participants" but also states that Invensys has "discretionary
authority both to determine an employee's eligibility for benefits and to
construe the terms of the plan[.]" [Id.].

Long term disability benefits under this Plan are insured and paid
pursuant to an insurance policy with Life Insurance Company of North
America, which is a subsidiary of CIGNA Corporation. [Id., at Plan 0031].
Benefits are funded through employee contributions and premiums. [Id., at
Plan 0029].

Long term disability benefits are payable to an employee pursuant to
a schedule of benefits which defines classes of eligible employees. [Id., at
Plan 0033].  Class 1 covers employees of the Invensys Powerware Division
while Classes 3 and 4 cover union employees. [Id.].  It is undisputed that
Simontacchi does not fall within these classes.   He was awarded benefits
as a member of Class 2 which is defined as "All active, Full-time, non-

9

union Employees of Invensys Inc. regularly working a minimum of 30 hours per week, excluding temporary, seasonal, co-op, contractors or casual Employees."[5] [Id.].

A Class 2 disabled Invensys employee is entitled to receive as a long term disability benefit the "lesser of 60% of [his] monthly Covered Earnings rounded to the nearest dollar or the Maximum Disability Benefit." [Id., at Plan 0039]. The Plan defines Covered Earnings as

> an Employee's annual wage or salary as reported by the Employer for work performed for the Employer as in effect just prior to the date Disability begins. It includes earnings received from commissions **but not bonuses**, overtime pay and other extra compensation. Covered Earnings are determined initially on the date an Employee applies for coverage.

[Id.]. (emphasis added).

The Maximum Disability Benefit for a Class 2 employee is $10,000 per month. [Id.].

On December 11, 2002, the Plan was amended to create an additional class of employees, Class 5. [Doc. 34-3 at S 0063-65]. Class 5 includes "All active, Full-time non-union Employees of Invensys *Production Management* regularly working a minimum of 30 hours per week." [Id., at S

---

[5]Effective July 1, 2002, this definition was amended to also exclude employees of Invensys Production Management. [Doc. 34-3 at S 0063].

0063] (emphasis added).  The definition of Covered Earnings for Class 5 employees is the same as that for Class 2 employees except earnings include "commissions and shift differential but not bonuses, overtime pay and other extra compensation." [Id., at S 0067].  The disability benefit for a Class 5 employee is the "lesser of 60% of [his] monthly Covered Earnings rounded to the nearest dollar or the Maximum Disability Benefit." [Id.].  The Maximum Disability Benefit is $20,000 per month, as opposed to the $10,000 cap for Class 2.

On January 14, 2003, Invensys provided notice to Simontacchi that his employment would be terminated. [Doc. 1 at 9; Doc. 34-2 at ¶16].  On that same date, Simontacchi applied for long term disability benefits. [Doc. 1].

In November 2003 Plaintiff was awarded benefits of $10,000.00 per month. [Doc. 1].  The following August Simontacchi objected to this award as inadequate, [Doc. 34-4 at S-0058], citing two grounds.  First, he argued that he should have been treated as a Class 5 employee rather than Class 2.  Second, he asserted that his bonuses should have been included in the computation of his covered earnings.

Simontacchi formally appealed the denial of his request for additional

benefits on these grounds and his appeal was denied in January 2005. [Doc. 47-16 at S 0140; Doc. 34-5 at S 0141-42]. Having exhausted his administrative appeals, Simontacchi timely commenced this action. [Id.].

At the time of his termination, Simontacchi's annual salary was $202,200.00 or $16,850.00 per month. [Doc. 34-3 at S 0014; Doc. 34-5 at S 0141]. Pursuant to the Plan a Class 2 employee would receive a disability payment of the lesser of sixty per cent of salary or $10,000.00. Since sixty percent of $16,850.00 is $10,110.00, Simontacchi began to receive the lesser amount of $10,000.00 per month. [Id.]. Thus, if the Plaintiff is determined to have been correctly classified as a Class 2 employee, then his long term disability payments are capped at the amount he was receiving. On the other hand, if he were classified as a Class 5 employee his monthly payments would increase to the lesser of $20,000.00 or sixty percent of covered earnings. Then an analysis would have to be conducted as to what amounts of Plaintiff's compensation would be included in the proper calculation of his covered earnings. If his bonuses are not included in this calculation his monthly benefit would increase by only $110.00. (Sixty percent of salary is $10,110.00, which is the lesser of $10,110.00 and $20,000.00.) If, however, his bonuses are

included in his covered earnings, then his benefit would be higher.

After Simontacchi's complaint in August 2004 that his award of benefits had been incorrectly calculated, Invensys conducted a review and notified Simontacchi that it denied his claim for additional benefits, [Doc. 34-5 at S 0117], stating "Throughout your tenure you were on the payroll of the Barber-Colman Company, which became Invensys Building Systems, Inc. on December 19, 1999. All employees on that payroll who enrolled in the Invensys Long Term Disability Plan were entitled to benefits pursuant to Schedule of Benefits/Class 2." [Id.]. Simontacchi disputed Invensys' review of his disability benefits, claiming that he should have been classified as a Class 5 employee because he was actually employed by Invensys Production Management. [Doc. 34-5 at S 0124].

As proof of his contentions, Simontacchi has attached copies of letters which he wrote to Invensys disputing his award. [Doc. 34-4 at S 0074-83]. Therein he asserted that he worked for Barber-Colman Industrial Instruments which "report[ed]" to Eurotherm which became part of Invensys Production Management in 2002. [Id., at S 0075]. He attached to one of the letters a copy of the Invensys 2002 annual report in which, he claimed, a new organizational structure was announced. [Id., at S 0076].

The page from the annual report included in the record shows that on May 1, 2002, Eurotherm was transferred from Invensys Automation Systems to Invensys Production Management. [Id., at S0080]. There is, however, no evidence in the record that Barber-Colman Industrial Instruments was ever a division of Eurotherm. Moreover, Simontacchi's mere claim in a letter that Barber-Colman "reported" to Eurotherm is not proof thereof.

Contrary to Simontacchi's assertions, the administrative record shows that he enrolled in the long term disability benefits program provided by Invensys Controls System and not Invensys Production Management. Only Production Management employees are eligible for treatment as Class 5 employees. Controls Systems employees such as the Plaintiff must be classified as Class 2. For this reason, Simontacchi's assertion regarding the transfer of Eurotherm into Production Management is irrelevant to his classification.

It is of substantial significance that at the same time that Simontacchi was insisting that he should have been classified as a Class 5 employee because he was an employee of Invensys Product Mangement, he also complained to Invensys that it *should have offered* him the opportunity to *change* his enrollment from Invensys Controls to Invensys Production

Management. [Id., at S 0125].  By this the Plaintiff acknowledges that he enrolled in, was *aware* he was enrolled in, and *remained* enrolled in the *Invensys Controls* long term disability benefits program, not that of Invensys Production Management.

Moreover, it is undisputed that Simontacchi did not change the election made in his October 31, 2001 enrollment form.  In fact, he applied for *short term* disability benefits pursuant to the Invensys Controls program (Invensys Accident & Sickness Plan for Salaried Exempt Employees). [Doc. 47-3].  When those benefits were denied to him, he sued Invensys in Simontacchi v. Invensys, Inc., 3:06cv52 (Simontacchi III), attempting to recover such benefits.  One cannot be an employee of Invensys Controls for the purposes of short term disability benefits while an employee of Invensys Product Management for the purposes of long term disability benefits.  Plaintiff's positions are plainly inconsistent.

In a note to Simontacchi's administrative record dated January 7, 2005, the benefits administrator reported that an error in Simontacchi's file had been discovered in December 2004. [Doc. 34-5 at S 0138].

> When Eurotherm Group was transferred from IBS ([Invensys] Building Systems/Controls) to Foxboro (Production Management) on January 1, 2004, all participants in the medical plan were transferred with Cigna's eligibility system as a group, which is the

15

> normal process. Mr. Simontacchi was included in the group by mistake. He should not have been transferred *because his employment remained at IBS* ([Invensys] Building Systems/Controls). A correction of this error was made on December 15, 2004. The Plain City corporate office, in cooperation with the HR staff at IBS, made a correction to the Cigna Eligibility System placing Mr. Simontacchi's eligibility record correctly in locator code NILLI in account number 2452185.[6] A review of all transfers occurring at the time of the Eurotherm move to Production Management is currently being conducted.

[Id.] (emphasis added). Simontacchi argues that this error shows he was actually a Eurotherm employee entitled to Class 5 status. It shows the contrary, however. The note unequivocally states that Simontacchi's employment remained with Invensys-Controls, and that he was never with Eurotherm. As noted, Simontacchi elected to participate in the retirement and benefits package of Invensys Controls System. The correction of this error is further proof that he made such an election and never changed it. The fact that other employees' files were subsequently reviewed shows that other employees made similar such elections. It should be noted that this error arose with regard to medical benefits rather than disability benefits and occurred the year after Plaintiff's status as a Class 2 member had already been determined.

---

[6]This is the same locator code and account number in which Simontacchi enrolled on October 31, 2001.

In summary, the evidence presented by the Plaintiff as part of the administrative record fails to present sufficient evidence to prove that he was employed at the relevant time by Invensys Production Management. The Court, therefore, finds that Plaintiff was employed by and enrolled in the benefits program of Invensys Controls, and not Invensys Production Management, and that the Plaintiff did not meet the requirements for being classified as a Class 5 employee under the Plan, but rather was properly classified as a Class 2 employee.

Turning the Court's attention to the question of whether Simontacchi's bonuses should have been included in the calculation of his covered earnings, the evidence presented in the administrative records shows the following.

First and foremost it should be noted that the definition of Covered Earnings stated in the Plan for both Class 2 and Class 5 specifically and unequivocally excludes bonuses. [Doc. 34-2 at Plan 0039, Doc. 34-3 at S0067]. That would appear to be the end of the inquiry. Plaintiff, however, points to the following evidence in the administrative record.

In processing his application for long term disability benefits, Tania Gougler (Gougler), a CIGNA case manager, contacted Steve Ives,

Invensys Human Resources vice-president, to verify Simontacchi's salary and to clarify whether he had earned any commissions within the past twenty-four months. [Doc. 34-3 at S 0014]. Ives responded with Simontacchi's salary and reported that two *bonuses* had been paid in 2001 and 2002. [Id.]. Simontacchi argues that report shows that Ives conceded that the bonuses should be included in covered earnings. This argument overlooks the fact that Invensys computed Simontacchi's long term disability benefit on the basis of his covered earnings as *excluding* bonuses. Ives' report of factually correct information does not constitute any form of concession.

Simontacchi also claims that during the processing of his application, CIGNA entered his salary into their computer system as $20,834.25 per month. [Doc. 34-4 at S 0073]. He argues that this proves that Invensys included "both salary and commissions/bonuses" in covered earnings. [Doc. 47 at 5]. The document in question, however, is the statement of CIGNA, not Invensys. Moreover, there is nothing in this document that connects it to Simontacchi. His name appears nowhere on it. The Court therefore is compelled to find that this document proves nothing regarding the covered earnings paid to Simontacchi as of the time of his disability.

18

Simontacchi also claimed that the bonuses he received were actually "commissions" and therefore should have been included in computing his covered earnings. [Id., at S 0059]. Although Simontacchi characterized these payments as "commissions" in this correspondence, he has not presented any evidence that the 2001 and 2002 payments were anything other than bonuses. [Doc. 47 at 5]. His position is limited to legal argument that there is no distinction between bonuses and commissions and that the alleged computer entry shows that CIGNA and Invensys "agreed that Plaintiff's salary and incentives *whether bonuses or commissions* were included to calculate his LTD benefits." [Id.] (emphasis provided). In short, in response to summary judgment, Simontacchi presented no admissible evidence that the 2001 and 2002 payments were commissions. The administrative record shows that the parties consistently considered any such payments to be bonuses. Moreover, the Plan document explicitly includes commissions and explicitly excludes bonuses from covered earnings, thus completely undermining Plaintiff's argument that there is no distinction between the two.

In summary, the Plaintiff has presented no evidence to prove that he received any payments from Invensys that fall within the Plan definition of

Covered Earnings other than his salary. The Court, therefore, finds that the amount of Covered Earnings received by the Plaintiff during the relevant period was $16,850.00 per month.

It is noted that Simontacchi attached to his affidavit of October 31, 2007, some documents which are not included in the administrative record. Pursuant to Judge Mullen's Order of February 13, 2007, the Court has excluded such evidence from consideration.

## CONCLUSIONS OF LAW

The Plaintiff seeks relief pursuant to 29 U.S.C. §1132(a)(1)(B) which provides that a participant in an employee welfare benefit plan covered under ERISA may bring a civil action (1) to recover benefits due under the terms of the plan, (2) to enforce his rights under the terms of the plan and/or (3) to clarify his rights to future benefits under the terms of the plan. Under *de novo* review, the Court reviews Simontacchi's claim, as it would any other contract claim, by looking to the terms of the plan and manifestations of the parties' intent. Booth v. Wal-Mart Stores, Inc., 201 F.3d 335, 341 (4th Cir. 2000). The language of the plan must be given its common and ordinary meaning as a reasonable person in the position of the plan participant would have understood the words, not as the actual

participant would have so understood.  <u>Chiles v. Ceridian Corp.</u>, 95 F.3d 1505, 1511 (10th Cir. 1996); <u>Booth</u>,  201 F.3d at 341. ("ERISA plans, as contractual documents, are interpreted *de novo* by the courts, which conduct their review 'without deferring to either party's interpretation.'") (citation omitted).  Thus, the Court first construes the terms without deferring to either party and then determines whether the plan administrator made a correct decision based on the record before it. <u>Firestone Tire and Rubber Co. v. Bruch</u>, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).  Because review here is *de novo*, no deference is given to the decision and no presumption of correctness is applied.  <u>Booth</u>,  201 F.3d at 341.

The Court first addresses Simontacchi's claim that he should have been awarded benefits as a Class 5 employee.  The Court concludes that the language of the Plan is clear and unambiguous; employees enrolled in the long term disability plan of Invensys Controls System were given Class 2 status.  <u>Id</u>.  The Court also finds that Simontacchi has failed to present any admissible evidence that he was anything other than an employee of Invensys Building Systems or that he was enrolled in anything other than the Invensys Controls Systems long term disability benefits program.  <u>Diaz</u>

v. Prudential Ins. Co. of America, 499 F.3d 640, 643 (7th Cir. 2007) (ERISA claimant must bear the burden of proving entitlement to the benefits while administrator bears burden of proving exclusion); Donnell v. Metropolitan Life Ins. Co., 165 Fed.Appx. 288, 296 n.9 (4th Cir. 2006), *citing* Ruttenberg v. U.S. Life Ins. Co., 413 F.3d 652, 663 (7th Cir. 2005) (ERISA plaintiffs must prove that their insurance contract entitles them to benefits). Simontacchi has presented only vague conjecture as to the corporate structure of the entities involved by claiming that Barber-Colman "reported to" Eurotherm and thus, he became a Production Management employee entitled to Class 5 status. Such is insufficient to meet his burden. Emmett v. Johnson, 532 F.3d 291, 308 (4th Cir. 2008) (inferences about what might have occurred in the past which are not supported by objective evidence insufficient). Nor does an internal administrative mistake causing Simontacchi's medical plan to have been temporarily transferred the year after his disability determination prove that he was ever an employee of Production Management. Clark v. BASF Salaried Employees' Pension Plan, 329 F.Supp.2d 694, 700 (W.D.N.C. 2004), *affirmed* 142 Fed.Appx. 659 (4th Cir. 2005) (erroneous projected benefits do not alter terms of plan). It is undisputed that Simontacchi never changed his enrollment form in the

Invensys Controls Systems plan which he signed and dated October 31, 2001.[7]  As a result, the Court finds as a fact that Simontacchi was enrolled in the Invensys Controls System long term disability benefits plan and as matter of law that Simontacchi was properly classified under the Plan as a Class 2 employee.  Diaz, 499 F.3d at 643. (noting the hybrid method of determining *de novo* review in ERISA cases and holding the court must come to an independent decision on both factual and legal issues forming the basis of the claim).

The Court next considers Simontacchi's argument that bonuses paid to him in 2001 and 2002 should have been included in computing his covered earnings.  "Questions involving the scope of benefits provided by a plan to its participants must be answered initially by the plan documents, applying the principles of contract interpretation."  Chiles, 95 F.3d at 1515. The Court gives that language "its common and ordinary meaning as a reasonable person in the position of the participant, not the actual participant, would have understood the words to mean."  Id., at 1511.

_____

[7]Simontacchi makes a weak argument that he should have been given a chance to change his enrollment.  As previously noted, this is an admission that he remained enrolled in the Invensys Controls Systems Plan.  To the extent he may attempt to argue a breach of a fiduciary duty, that claim would fail because he had an adequate avenue of appropriate relief pursuant to Section 502(a)(1)(B).  Korotynska v. Metropolitan Life Ins. Co., 474 F.3d 101, 105 (4th Cir. 2006).

Here, the language of the Plan is clear and unambiguous.  Pirkheim v. First

Unum Life Ins., 229 F.3d 1008, 1010 (10th Cir. 2000); Blackshear v.

Reliance Standard Life Ins. Co., 509 F.3d 634 (4th Cir. 2007).  Covered

earnings means:

> an Employee's annual wage or salary as reported by the
> Employer for work performed for the Employer as in effect just
> prior to the date Disability begins.  *It includes earnings received
> from commissions but not bonuses*, overtime pay and other extra
> compensation.  Covered Earnings are determined initially on the
> date an Employee applies for coverage.

[Doc. 32-2] (emphasis provided).

> The Plan's goal is to provide a disabled employee with a monthly
> payment to replace a percentage of the salary the employee
> would have earned from the sponsoring employer absent the
> disability.  The exclusion of previously earned bonus pay from the
> calculation of "[covered] earnings" serves this purpose because
> the employer [] did not guarantee that future "bonuses" would
> have been paid to the employee.

Riddell v. Unum Life Ins. Co. of America, 457 F.3d 861, 864-65 (8th Cir.

2006).  Indeed, there is no guarantee that an employee would have earned

future bonuses; therefore, the employer sought to limit the inclusion of

income which might not be repeated in future earnings.[8]  Id.  This is distinct

from a commission which refers to a fee paid to an employee for

---

[8] Thus, the fact that Simontacchi may have actually received the bonuses prior
to the date of disability does not refute the clear and explicit exclusion of them from the
definition.

transacting a piece of business, usually paid as a percentage of the money received from such transaction.  Keszenheimer v. Reliance Standard Life Ins. Co., 402 F.3d 504, 509-10 (5th Cir. 2005); see also, Andrews v. Blue Cross Blue Shield of Nebraska, 165 Fed. Appx. 650 (10th Cir. 2006) (plan language clear and unambiguous where earnings included commissions actually received but excluded commissions earned but not paid as well as bonuses; employee not entitled to benefits except as to commissions actually received).

Thus, the Court finds and concludes that a reasonable person in the position of the Plan participant, not Simontacchi as the actual participant, would have understood the definition of covered earnings to exclude bonuses.   Chiles,  95 F.3d at 1511.

In summary, Simontacchi was properly awarded long term disability benefits as a Class 2 employee and his bonuses were properly excluded from covered earnings.  The determination by the Plan was, therefore, correct as to the amount of disability benefits to which the Plaintiff was entitled thereunder.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 33] is hereby **GRANTED** and judgment is simultaneously entered herewith in favor of the Defendant.

Martin Reidinger
United States District Judge

Signed: February 19, 2009