# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

## CIVIL CASE NO. 3:05cv283
## [Lead Case]

| | | |
|---|---|---|
| **JOHN F. SIMONTACCHI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **MEMORANDUM OF DECISION** |
| | ) | |
| **INVENSYS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**THIS MATTER** came before the Court on February 19, 2008, for trial

without a jury on the issue of what damages, if any, the Defendant is

entitled to recover of the Plaintiff on its counterclaims.  Also before the

Court is the issue of whether the Plaintiff should be sanctioned for violating

Rule 11 of the Federal Rules of Civil Procedure, as set forth in the Court's

show cause order [Doc. 53].

The Court has previously entered a Memorandum and Order [Doc.

53] and Partial Judgment [Doc. 54] wherein 1) summary judgment was

granted for the Defendant on all of the Plaintiff's claims with the exception

of the Plaintiff's claim for long term disability benefits pursuant to ERISA,

which claim remains pending, 2) summary judgment was granted in favor of the Defendant as to the Plaintiff's liability to Defendant on the Defendant's counterclaims for the Plaintiff's breach of contract in prosecuting claims that the Plaintiff had previously released and dismissed and for having violated the confidentiality provision of the prior settlement agreement between the parties, and 3) summary judgment was granted in favor of the Plaintiff as to the Defendant's other counterclaims.

For the reasons stated herein, the Court awards damages in favor of the Defendant on the breach of contract issues, but finds that sanctions against the Plaintiff  pursuant to Rule 11 are not justified.  Plaintiff's pending  ERISA claim for long term disability benefits is the subject of a separate Memorandum and Order and Judgment that are being entered contemporaneously with this document.

## STANDARD OF REVIEW

The parties to this action agreed that the issue of damages was to be tried to the Court as the finder of fact.  When "a jury trial is waived, the judge weighs the evidence, determines the credibility of the witnesses, and finds the facts." United States v. Bales, 813 F.2d 1289, 1293 (4th Cir. 1987).  The Court may also "select among conflicting inferences to be drawn from the testimony."  Id.; Amalfitano v. Rosenberg, 533 F.3d 117 (2nd

Cir. 2008) (finder of fact chooses between permissible competing inferences); In re French, 499 F.3d 345, 357 n.10 (4th Cir. 2007). "[I]n a bench trial, it is the district court, which enjoys the benefit of live testimony and has the opportunity first hand to weigh credibility and evidence, that has the task of sorting through and making sense of the parties' competing narratives." Penncro Associates, Inc. v. Sprint Spectrum, L.P., 499 F.3d 1151, 1161 (10th Cir. 2007) (citation omitted). As a result, the Court will find the facts specially and state its conclusions of law separately. Fed.R.Civ.P. 52(a)(1).

As to its counterclaims, the Defendant is in the position of a plaintiff and thus has the burden of proving damages by the greater weight of the evidence. Magnum Foods, Inc. v. Continental Cas. Co., 36 F.3d 1491, 1503 (10th Cir. 1994) (in a diversity case, the court examines evidence in terms of the underlying burden of proof as dictated by state law); Simms v. Mutual Benefit Ins. Co., 137 Fed.Appx. 594 (4th Cir. 2005); In re Herron, 381 B.R. 184 (D.Md. 2008) (the burden of proof for breach of contract claim is assessed by state law); Metcalf v. Palmer, 61 N.C.App. 136, 300 S.E.2d 401 (1983) (burden of proof is by the greater weight of the evidence); accord, Porter v. Porter, 2008 WL 926632 (W.D.N.C. 2008).

**FINDINGS OF FACTS**

On August 13, 2003, the Plaintiff, John Simontacchi, filed an action in state court against Defendant Invensys which was subsequently removed to this Court. Simontacchi v. Invensys, PLC and Robershaw Controls Company, 3:03cv442 (Simontacchi I). On November 18, 2004, the parties signed a "Settlement Agreement & Release" which recited that Simontacchi had asserted claims for "breach of contract, declaratory judgment, breach of the covenant of good faith and fair dealing, and claims under the North Carolina Wage and Hour Act[.]" [Doc. 34 at Exhibit 3]. In exchange for the payment of a sum of money, Simontacchi released Invensys from

> *all claims arising out of his employment with Defendants*, *all claims for breach of express or implied contract or covenant of good faith and fair dealing*, all claims for retaliation, violation of public policy, negligence, breach of fiduciary duty, defamation, impairment of economic opportunity, interference with contractual relations, *all claims for violations of North Carolina statutory and common law*, and *all claims arising under* the following: Title VII of the Civil Rights Act of 1964, as amended; the Fair Labor Standards Act; *the North Carolina Wage and Hour Act*; the Employee Retirement Income Security Act of 1974, as amended; the Consolidated Omnibus Budget Reconciliation Act; the National Labor Relations Act; the Equal Pay Act; the Age Discrimination in Employment Act; the Family and Medical Leave Act; the Americans with Disabilities Act; 42 U.S.C. §1981; any other federal, state or local laws relating to employment or benefits associated with employment; claims for emotional distress, mental anguish, assault and battery, personal injury;

claims based upon any theory of unintentional, negligent or intentional tort; claims based upon any theory of wrongful, retaliatory or constructive discharge; and any and all claims that may be asserted on Simontacchi's behalf by others.

[Id., at I 0002-0003] (emphasis provided).

Excepted from the above recited release were two claims:

"Simontacchi's ability to pursue a claim for short term disability benefits pursuant to Invensys Accident & Sickness Plan ...  or long term disability benefits pursuant to the Invensys Long Term Disability Plan (Group Policy Number LK-030471), if any claims so exist." [Id., at I 0004].

The Agreement contained a confidentiality clause.

The parties agree to keep *the fact, amount, and terms of this settlement in strict confidence*, unless and only to the extent they have been authorized by this Agreement or otherwise in writing by the other parties to make disclosure. *The Parties, may, if specifically asked about the dispute, state it was resolved, but the Parties shall not further characterize the settlement or the claims that were the subject of this Agreement.*
. . .
*The Parties further agree not to disclose this document, its contents or subject matter to any person* other than to their lawyers, accountants, spouses, income tax preparers, or the executor(s) of that party's will, except pursuant to written authorization by the other parties or as compelled by law or a court of competent jurisdiction. ...  This Agreement may be used as evidence in any subsequent proceeding alleging a breach of this Agreement.

[Document 47-17 at I 0005-0006] (emphasis provided).

Finally, the contract contained an attorneys' fees provision.

> The Parties further agree that if they attempt to avoid or set aside the terms of this Agreement, and this Agreement is successfully asserted *as a defense or bar to any claim asserted* by any of the Parties, the party asserting any such claims that are determined by a court of competent jurisdiction to be barred shall be liable for the costs and attorneys' fees of the other party *in defending such claims or asserting such defense* based on this Agreement.

[Id., at I 0004] (emphasis added).

The parties agree that Invensys paid and Simontacchi accepted payment pursuant to the terms of Settlement Agreement. [Doc. 73 at ¶11]. Thus, the parties have agreed that consideration was provided for the terms and provisions of the contract. The parties have also stipulated that this contract is governed by the law of the State of North Carolina. [Doc. 64 at ¶2].

On May 19, 2005, Plaintiff filed a second action against Invensys in state court, which was also removed to this Court. Simontacchi v. Invensys, Inc., 3:05cv283 (Simontacchi II). In that action, Plaintiff asserted a claim for long term disability benefits pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §1001, *et. seq.* In that Complaint, Plaintiff specifically revealed the amount he had received in settlement in Simontacchi I. [Doc. 1 at ¶25]. At no time did Simontacchi have permission from Invensys to do so.

After removing the action to this Court, Invensys answered and

counterclaimed for breach of contract. [Simontacchi II, Doc. 2]. Invensys

claimed that the Plaintiff's disclosure in his new Complaint of the

settlement amount paid in the prior lawsuit was a breach of the

confidentiality provision in the Settlement Agreement. [Id.].

On January 9, 2006, Plaintiff filed yet a third action in state court

against Invensys which was also removed to this Court. Simontacchi v.

Invensys, Inc., 3:06cv52 (Simontacchi III). In that action, Plaintiff asserted

claims for short term disability benefits, breach of contract, breach of the

covenant of good faith and fair dealing and violations of the North Carolina

Wage and Hour Act. [Id., at Doc. 1]. In response, Invensys filed a

counterclaim alleging that by asserting these claims (except for the short

term disability claim) Plaintiff breached the Settlement Agreement and

Release. [Simontacchi III, Doc. 2 at 8-10]. On March 20, 2006,

Simontacchi, without permission from Invensys, filed an unredacted copy

of the full Settlement Agreement in the record of Simontacchi III.

[Simontacchi III, Doc. 7]. By so doing, he disclosed for a second time the

amount paid in settlement, this time along with all the terms of the

settlement, and thus again breached the confidentiality provision.

Plaintiff then filed what he denominated as "counterclaims" in

response to the Defendant's counterclaims. [Doc. 14]. Invensys then

undertook to defend these new "counterclaims" as well.

All of Plaintiff's claims, including his "counterclaims," were dismissed on summary judgment, [Docs. 53, 54], with the exception of the claim for long term disability benefits which remains pending and is being disposed of by a separate Memorandum and Order and Judgment being entered contemporaneously herewith. As for the Defendant's counterclaims for breach of contract based on Simontacchi's disclosure of the amount and terms of the Settlement Agreement and his having brought actions based on claims that he had relinquished in the Settlement Agreement, summary judgment on the issue of liability was granted in favor of the Defendant, [Docs. 53, 54], and the issue of damages for these breaches was the subject of the bench trial conducted in this case. The Defendant's other counterclaims were dismissed on summary judgment.

As for the damages resulting from Simontacchi's disclosure of the amount of the settlement of the first lawsuit and the terms of that settlement, Invensys presented no evidence of any harm that was proximately caused by such disclosure, except for the attorneys' fees incurred in seeking redress for such breach. Attorneys' fees, however, are recoverable only to the extent allowed by the contract between the parties and by law. Regarding the damages resulting from Simontacchi asserting

claims that he had previously relinquished as part of the original settlement, the only losses about which Invensys presented evidence were the attorneys' fees incurred in defending the release claims. With these fees as well, they are recoverable only to the extent allowed by the parties' agreement and the law.

Invensys presented extensive evidence about the attorneys' fees it has incurred and paid. It hired the law firm of McGuireWoods LLP (McGuireWoods) to represent it in connection with both Simontacchi II and Simontacchi III. [Doc. 73 at ¶¶12, 13]. Susan Dion (Dion), an attorney employed by McGuireWoods, testified at trial. She has been involved with Invensys' defense and prosecution of the counterclaims in all three Simontacchi cases. Dion testified as to the manner in which McGuireWoods maintains its billing records for time entries made by its attorneys as well as its method of billing its clients. Exhibit 4, admitted into evidence during the trial, shows the actual entries made by attorneys who represented Invensys during Simontacchi II and III. [Doc. 76-13]. Dion testified that Bruce Steen, a partner in McGuireWoods, and Aaron Longo and Austin Breen, associates in the firm, worked along with her on the Invensys cases. She also testified that she was familiar with their work and their standard hourly rates which were accurately reflected in the

summary. Each entry on Exhibit 4 shows the date the services were performed, the performing attorney, the services rendered, the time spent on the task at hand and the amount billed. [Id.].  The time records reflect time having been kept in six minute increments (i.e., tenths of hours). [Id.].

Dion testified that she personally reviewed all of the billing records for legal fees charged to Invensys for Simontacchi II and III.  She reviewed the entire list of fees and separated entries specific to the breach of settlement agreement counterclaim in Simontacchi II based on the disclosure of the settlement amount and the defense of released claims in Simontacchi III. As a result, the entries on Exhibit 4 do not relate, for example, to work performed exclusively in connection with Simontacchi's short term and long term disability benefits claims.  Nonetheless, Dion testified that some time entries on Exhibit 4 did involve legal services which involved those claims as well as the claims at issue.  For example, Invensys' Motion for Summary Judgment addressed all of the legal claims asserted in Simontacchi II and III.  As to those entries, Dion attributed two-thirds of the time spent by an attorney to work done on the defense of the short term and long term disability benefits claims; that is, unrelated to the breach of contract counterclaims and defense of the relinquished claims.

Dion testified that she used this method of allocating the legal fees

on Exhibit 4 through December 2007. She also used the same process in connection with the invoices actually sent to Invensys. Those invoices are reflected in Exhibit 5 which was admitted into evidence during the trial. Invensys directed McGuireWoods to use a cutoff date of February 15, 2008 for legal fees. It further instructed McGuireWoods not to seek recovery of its costs in connection with Simontacchi II and III. As a result, there is no issue concerning costs.[1]

In addition to omitting fees which were unrelated to the issues at hand, Dion also allocated the charges for services rendered between work done in connection with Invensys' prosecution of its counteclaim for the breach of the confidentiality provision and its defense of Simontacchi's assertion of the previously released claims. That allocation is reflected on Exhibit 6, prepared by Dion, which was also admitted into evidence during the trial. [Doc. 76-17]. In that exhibit, referred to as a Summary of Counterclaim Fees, Dion provided the date of invoice, the invoice number, the total fees billed and the amount of fees billed as to each of the two categories, "Breach of Confidentiality Fees" and "Released Claims Fees." [Id.].

---

[1]Simontacchi's attorney argued the issue of costs in his trial brief. The testimony at trial, however, renders the issue moot since Invensys concedes it is not seeking to recover any costs for either action.

Finally, as to fees for services rendered between January 11, 2008 and February 15, 2008, Dion did not use the one-third, two-thirds allocation because all work that was done pertained only to Simontacchi's breach of the Settlement Agreement and not at all related to the defense of the benefits claims. As to those entries, Dion testified that she simply divided them equally between the two categories at issue herein. It should be noted that while those later entries are reflected on Exhibit 4 (time spent), they are not shown in Exhibit 5 (time billed) because the invoices had not yet been sent to Invensys as of the time of trial.

Dion testified that none of the fees sought as damages include any time spent in connection with potential sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. She also did not include any services which arguably could only relate to short and long term benefits, such as briefing on the *res judicata* issue.

Simontacchi's attorney conducted a lengthy cross-examination of Dion in an attempt to discredit her methodology for allocating services rendered. At no point did he object to the hourly rates charged, the necessity for the services rendered, or the amount of time actually spent on each task. His challenge to this evidence was solely to the allocation of the time rendered as between short and long term benefits versus breach

of confidentiality and released claims fees.

During cross-examination, Dion reiterated that she was personally responsible for making the categorizations and allocations, as well as redactions for unrelated work to her time sheets and to those of the other attorneys who worked on the case. Dion clarified that there might be one or two entries within Exhibit 4 which showed services rendered, for example, in connection with the Rule 11 issue. In such situations, however, the time spent on that service was not counted even where the particular entry relating to the task performed could not be redacted from the document due to software issues.

Dion testified at length as to individual entries and how she computed the amounts attributed to each category on Exhibit 6.[2] She also acknowledged that if she felt that less than one-third of the time reflected in a specific entry was spent on the issues at hand, she further reduced the fees attributable in an effort to be fair. Despite an exhaustive review of the entries, only a few insignificant errors were uncovered through cross-examination.

_____

[2] For example, on February 12, 2006, Dion worked 2.9 hours on <u>Simontacchi III</u> for a total of $812.00. On February 13, 2006, she worked 3.8 hours on <u>Simontacchi III</u> for a total of $1,064.00. Dion added the two sums together for a total of $1,876.00 and attributed one-third of that amount, $625.33, to the Released Claims Fees category on Exhibit 6.

The Court finds that Dion's testimony was entirely credible, that she erred on the side of caution in assessing the services rendered, and that she more likely undercharged than overcharged for the amounts attributable to the confidentiality and released claims issues in Simontacchi II and III.  Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

The Court finds that the time spent on each of the tasks shown on Exhibits 4, 5 and 6 was reasonable.  The Court also finds that the rates charged by McGuireWoods were as follows: Bruce Steen $325 per hour until March 1, 2007, and $375 per hour thereafter; Susan Dion $235 per hour until February 1, 2006, then $280 per hour from that date to January 1, 2007, and $305 per hour thereafter; Aaron Longo $220 per hour until March 1, 2007, and $280 per hour thereafter; and Austin Breen $260 per hour; and that these hourly rates are reasonable.

The Court finds that through the entry of the partial summary judgment in this case that Invensys had incurred $8,736.26 in prosecuting its counterclaim for Simontacchi's breach of the confidentiality agreement, and incurred $7,933.60 in defense of the relinquished claims that Simontacchi asserted in the second and third actions.  After the Court entered summary judgment dismissing Simontacchi's claims (other than

the long term disability claim), no further fees were incurred by Invensys in the defense of these previously released claims. Invensys incurred an additional $29,492.00 in prosecuting its counterclaims for Simontacchi's breach of the Settlement Agreement, which was spent on pursuing the counterclaim for breach of the confidentiality provision and on pursuing the counterclaim for breach of the release in equal amounts.

## CONCLUSIONS OF LAW

The parties have stipulated that North Carolina law governs in this case. [Doc. 64 at ¶2]. The Supreme Court of North Carolina has clearly stated that

> [E]ven in the face of a carefully drafted contractual provision indemnifying a party for such attorneys fees as may be necessitated by a successful action on the contract itself, our courts have consistently refused to sustain such an award absent statutory authority therefor.

Stillwell Enterprises, Inc. v. Interstate Equipment Co., 300 N.C. 286, 289, 266 S.E.2d 812, 814-15 (1980).

The process of determining whether Invensys can recover the attorneys' fees it has incurred, therefore, involves a two step process of ascertaining whether the contract between the parties calls for the allowance of such fees and, if so, then whether there is statutory authority

for such an award.

The Settlement Agreement and Release contained the following provision concerning the recovery of attorneys' fees:

> The Parties further agree that if they attempt to avoid or set aside the terms of this Agreement, and this Agreement is successfully asserted as a defense or bar to any claim asserted by any of the Parties, the party *asserting any such claims* that are determined by a court of competent jurisdiction to be barred shall be liable for the costs and attorneys' fees of the other party in defending such claims or asserting such defense based on this Agreement.

[Doc. 47-17] (emphasis added).

With regard to the Plaintiff's disclosure of the terms and the amount of the settlement in <u>Simontacchi I</u>, the Plaintiff not only attempted to avoid the requirements of the confidentiality provision of the agreement, but actually completed an avoidance of that provision by disregarding it and acting directly contrary to it. The Plaintiff, however, did not *assert a claim* that he was entitled to make such disclosure. He simply disclosed the settlement amount and terms. Therefore, no court of competent jurisdiction has held to be barred any *claim* that Plaintiff is entitled to disclose. The Defendant's fees incurred in bringing a counterclaim against the Plaintiff for such breach are not fees incurred *in defending a claim or asserting a defense*. For this reason the terms of the contractual attorneys' fees provision do not extend to allow Invensys to recover its fees incurred in

prosecuting its counterclaim against Simontacchi for having wrongfully disclosed the settlement terms and amount.

The Plaintiff's attempts to bring the claims that he had previously released and dismissed, on the other hand, were attempts to avoid the particular provisions of the Settlement Agreement whereby the Plaintiff relinquished those claims.  In granting summary judgment against the Plaintiff on those claims this Court, as a court of competent jurisdiction, has held those claims to be barred.  The testimony of Susan Dion and the exhibits offered and received into evidence in conjunction with her testimony show that Invensys incurred $7,933.60 in defending the relinquished claims as asserting defenses based on the Settlement Agreement.  These fees, thus, fall within the confines of the attorneys fees provision of the Settlement Agreement.  Of course, none of the fees incurred after the entry of summary judgment dismissing the Plaintiff's relinquished claims were incurred in defense of such claims, as the defense was then completed.

As the Stillwell Court pointed out, having determined that the Settlement Agreement provides for the recovery of this portion of the fees is not the end of the inquiry.  The Court must still discern whether there is a statutory basis for awarding the fees.   300 N.C. at 289, 266 S.E.2d at 814-

15.  This is the gist of Simontacchi's defense.  He argues that under North Carolina precedent "contractual provisions for attorney's fees are invalid in the absence of statutory authority," citing  <u>Forsyth Mun. Alcoholic Beverage Control Bd. v. Folds</u>, 117 N.C.App. 232, 238, 450 S.E.2d 498 (1994).

Invensys has been unable to point the Court to any statutory provision allowing for the award of attorneys' fees in situations as contemplated in the settlement agreement.  The closest statute is the one allowing the enforcement of attorneys' fees provisions in "evidences of indebtedness."  N.C. Gen. Stat. §6-21.2.  The argument is that Simontacchi is indebted to Invensys as a result of having breached the Settlement Agreement, and since the debt arises from the terms of  the agreement, the agreement itself thus constitutes some form of "evidence of indebtedness."  This argument, however, was rejected in <u>Lee Cycle Center, Inc. v. Wilson Cycle Center, Inc.</u>, 143 N.C.App. 1, 545 S.E.2d 745 (2001), *affirmed* 354 N.C. 565, 556 S.E.2d 293 (2001).  The "evidence of indebtedness" provision is limited to debt instruments, such as promissory notes.

It would appear that there is no statutory basis for awarding Invensys its fees.  There are, however, two exceptions to the requirement that a statute support the award of attorneys' fees.  These pertain to attorneys'

fees provisions in 1) separation agreements, <u>Bromhal v. Stott</u>, 341 N.C. 702, 462 S.E.2d 219 (1995), *rehearing denied* 342 N.C. 418, 465 S.E.2d 536 (1995) and 2) settlement agreements resolving litigation. <u>Carter v. Foster</u>, 103 N.C.App. 110, 404 S.E.2d 484 (1991).

Simontacchi argues that the Supreme Court of North Carolina has only recognized the separation agreement exception, relying on a footnote in <u>Lee Cycle</u>, 143 N.C. App. at 12, 545 S.E.2d at 752, n.2. This argument, however, ignores the explicit language in <u>Carter</u>.

> "Whether denominated accord and satisfaction or compromise and settlement, the executed agreement terminating or purporting to terminate a controversy is a contract, to be interpreted and tested by established rules relating to contracts." As stated by the North Carolina Supreme Court, ... "It is the duty of courts rather to encourage than to discourage parties in resorting to compromise as a mode of adjusting conflicting claims; and the nature or extent of the rights of each should not be nicely sc[r]utinized."
> . . .
> In view of the long standing policy which encourages the settlement of legal disputes between the conflicting parties and the enforcement of settlement contracts, we hold that ... the trial court did not err in awarding attorney's fees[.] In addition, since the provision for payment of attorney's fees was negotiated as part of the settlement, we decline to review its reasonableness.

<u>Carter</u>, 103 N.C.App. at 115-117 (citations omitted). This second exception was also recognized in <u>Forsyth</u> where the Court held that in <u>Carter</u> it had "enunciated an exception to [the general] principle in the case

of separation agreements in particular, *and indeed in the case of settlement agreements in general*."  117 N.C.App. at 238, 450 S.E.2d at 502. (emphasis added).

Simontacchi argues that <u>Carter</u> is distinguishable in that it involved a settlement agreement which included the payment of attorneys' fees previously rendered as part of the settlement.  North Carolina courts, he argues, make a distinction between such a provision and the enforcement of a contractual provision allowing an award of attorneys' fees in connection with a future breach.   Simontacchi's argument, however, is inconsistent with the manner in which the exception has been applied.  In <u>Carter</u> the Court announced an exception for attorneys' fees provisions found in settlement agreements resolving litigation.  It announced no limitation on that rule.  Subsequently the Court of Appeals in <u>Forsyth</u> did not articulate this exception being limited to only fees incurred prior to entering into the settlement agreement .  Moreover, the <u>Carter</u> exception has been applied more broadly than the Plaintiff advocates in the United States District Court in <u>VF Jeanswear Ltd. Partnership v. Molina</u>, 320 F.Supp.2d 412, 422-23 (M.D.N.C. 2004),

> As a general rule, attorney's fees are not available in North Carolina without express statutory authority, even if the parties' contract provides otherwise.  However, in <u>Carter</u>, the Court of

Appeals of North Carolina affirmed an award of attorney's fees pursuant to the terms of a negotiated settlement agreement. Though the fees were not statutorily authorized, the court reasoned that giving effect to the parties' agreement comported with the well-established policy of encouraging settlement of disputes and enforcing settlement contracts.

. . .

In consideration of the benefits he received, [Simontacchi] promised to release [Invensys] from all claims and "agree[d] that the Company would be entitled to recovery of its costs and attorney's fees incurred as a result of [a material breach of the agreement]." Therefore, under the reasoning of Carter, [Invensys] may recover reasonable attorney's fees as a result of [Simontacchi's] breach.

Id.

This is particularly true in the present case. The primary benefit for which Invensys bargained in settling Simontacchi I was that it would only have to defend two claims thereafter relating to Plaintiff's employment, i.e., the long term disability claim and the short term disability claim. Invensys bargained to be relieved of any cost in having to defend any other claims. By the Plaintiff breaching the Settlement Agreement and proceeding to sue on relinquished claims Invensys incurred the defense costs that it bargained to avoid. If the exception enunciated in Carter is not applied in this case, then a substantial element of the consideration that Simontacchi contracted to provide Invensys in the Settlement Agreement will have been rendered meaningless. The attorneys fees provision in the Settlement

Agreement was very narrowly drafted.  It only applied to fees incurred in defending the claims the releasing party already gave up. The provision on which Invensys relies is more than reasonable to accomplish the aims of the settlement.  Settlement of litigation must be encouraged and fostered. Setting aside a central provision to a Settlement Agreement that is so well tailored to the particular circumstances presented would not serve that purpose.  The Court will, therefore, conclude as a matter of law that the exception announced in <u>Carter v. Foster</u> applies to this case and serves to allow the Defendant to recover its attorneys' fees incurred in defending the Plaintiff's previously relinquished claims, even though there is no statutory basis for such recovery.

Simontacchi's defense to the claims for damages focused on whether there was a legal basis to award attorneys' fees and whether there had been any errors in the calculations of time expended or fees charged related to these claims.  Simontacchi made no argument that the fees incurred by Invensys were unreasonable or that the amount of time spent was unreasonable.

Invensys argued at trial that it should be entitled to recover the settlement payment it made in <u>Simontacchi I</u> as damages for the breach. In essence, Invensys argues that since it lost the benefit of its

confidentiality agreement and the release that it was entitled to restitution of the consideration paid. "In order to defeat a contract for failure of consideration, the failure of consideration must be complete and total" Harlee v. Harlee , 151 N.C. App. 40, 49, 565 S.E.2d 678, 684 (2002) citing Weyerhaeuser Co. v. CP&L, 257 N.C. 717, 722, 127 S.E.2d 539, 543 (1962). In this case, Invensys still got the benefit the portions of the release by which Simontacchi relinquished his claims, and by which it was able to argue that the release served to have Simontacchi's new filings dismissed. As such, there was not a complete failure of consideration and thus Invensys is not entitled to return of its payment.

In summary, Invensys is entitled to recover the fees it incurred in defending the claims that Simontacchi had previously relinquished, which amount to $7,933.60. As for the breach of the confidentiality agreement, Invensys has presented no evidence of any actual damages that it suffered as a result of the breach, and thus is only entitled to nominal damages, which the Court will award in the amount of $1.00.

## RULE 11 SANCTIONS

In the Memorandum and Order of January 11, 2008, [Doc. 53], the Court *sua sponte* ordered Simontacchi to show cause why sanctions

pursuant to Rule 11 of the Federal Rules of Civil Procedure should not be imposed for prosecuting the relinquished claims in Simontacchi III. The parties appeared at the final pre-trial conference on January 31, 2008 and argued the issue. In addition, at the conclusion of the trial, Simontacchi was given another opportunity to address the Court.

Rule 11 provides in pertinent part:

By presenting to the court a pleading, written motion, or other paper–whether by signing, filing, submitting, or later advocating it-- an attorney or unrepresented party certifies that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denial of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed.R.Civ.P. 11(b).

During the January 31, 2008 hearing, the Court clarified for

Simontacchi's attorney that the conduct at issue did not involve litigation concerning short or long term disability benefits. [Doc. 85 at 27]. The conduct which the Court viewed as being potentially sanctionable involved the claims asserted in Simontacchi III which had been relinquished in the settlement of Simontacchi I. [Id.]. Simontacchi's counsel argued, as he did in connection with the underlying litigation, that the release did not apply to claims for short term disability benefits cast as a claim under the North Carolina Wage and Hour Act. [Id., at 27-28]. According to counsel, a claim for short term disability benefits is, in essence, a claim for wages in the form of sick pay.[3] [Id.]. Assuming *arguendo* that such an argument would avoid sanctions, it did not address the other claims brought by Simontacchi in violation of the release.

Counsel also argued that Simontacchi should be held to a standard different from a licensed attorney and pointed out that he had had serious medical problems for the preceding three years. [Id., at 29-30]. In May 2007, Simontacchi had a heart transplant and his attorney argued that the medication he is required to take had caused significant confusion. [Id.].

---

[3] In this argument, Plaintiff's counsel contradicts Plaintiff's former *pro se* position wherein he claimed that he should be entitled to receive *both* his wages and short term disability benefits for the same period because they are two different things. In light of the rulings on summary judgment, this contradiction is irrelevant.

At the conclusion of the bench trial, Simontacchi's counsel argued

that although Simontacchi asserted claims for breach of the covenant of

good faith and fair dealing, he limited any recovery he sought to his claim

for short term disability benefits.  This argument, however, overlooks the

fact that Simontacchi sought additional, separate damages for these

claims.  [Doc. 82 at Exhibit A].

Both <u>Simontachhi II</u> and <u>Simontacchi III</u> were originally filed in state

court and removed by Invensys to this Court.

> Rule 11 sanctions cannot be imposed for pleadings filed in state
> court when the action is later removed to federal court.  But Rule
> 11 sanctions are available for false pleadings filed in federal court
> after the state court action is removed.

<u>Integrated Healthcare Systems, Inc. v. Horbach</u>, 181 F.3d 88 **3 n. (4th Cir.

1999), *citing* <u>Kirby v. Allegheny Beverage Corp.</u>, 811 F.2d 253, 257 (4th Cir.

1987); <u>Meadow Ltd. Partnership v. Meadow Farm Partnership</u>, 816 F.2d

970, 970-71 (4th Cir. 1987).  Thus, if any Rule 11 sanctions are to be

imposed for Simontacchi's conduct in <u>Simontacchi III</u>, they must not be

based on the initial filing of his action in state court.  Instead, they must be

based on Simontacchi's actions in this Court in continuing to prosecute

frivolous claims and/or making additional filings in this Court which violate

Rule 11.  <u>In re Allnutt</u>, 155 F.3d 557 (4th Cir. 1998).  As a result, the Court

must consider Simontacchi's conduct after the case was removed here by Invensys.  Bakker v. Grutman, 942 F.2d 236 (4th Cir. 1991).  If his offending conduct after removal was minimal, then sanctions are not appropriate. Meadow Ltd. Partnership, 816 F.2d at 970.  Moreover, in considering that conduct, it is appropriate for the Court to grant Simontacchi a degree of indulgence not extended to lawyers due to his *pro se* status at the time. Johnson v. Lyddane, 368 F.Supp.2d 529 (E.D.Va. 2005).  In this regard, the Court has considered Simontacchi's medical condition at the time in question, and Invensys has not objected to this consideration.  The question is whether under all these circumstances Simontacchi's actions were objectively reasonable at the time, and whether his conduct warrants the imposition of sanctions. [Id.].

After removing Simontacchi III to this Court, Invensys answered the Complaint and asserted its counterclaims.  Simontacchi then filed his Reply to the counterclaims in this Court and attempted to assert additional claims against Invensys.  When Invensys moved to consolidate Simontacchi III with Simontacchi II, Simontacchi filed a response objecting to the consolidation which he entitled "Motion for More Definite Statement." [Simontacchi II, Doc. 7].   Attached to that pleading was the unredacted copy of the confidential Settlement Agreement.  The cases were

subsequently consolidated.  The Court is compelled to find that under any other circumstances these two filings, the Reply to the counterclaims containing the purported further "counterclaims" and the filing of the unredacted copy of the confidential Settlement Agreement would not be considered objectively reasonable.  The Court, however, finds that Simontacchi's medical condition during the time in question, and the substantial confusion it apparently caused, mitigate the situation. Weisman v. Alleco, Inc., 925 F.2d 77, 80 (4th Cir. 1991).  For this reason, the Court will decline, in its discretion, to impose Rule 11 sanctions. Id.

The Court is also mindful that "a *sua sponte* show cause order deprives a [party] against whom it is directed of the mandatory twenty-one day 'safe harbor' provision provided by [] Rule 11."  Hunter v. Earthgrains Co. Bakery, 281 F.3d 144, 151 (4th Cir. 2002).  "In such circumstances, a court is obliged to use extra care in imposing sanctions on offending [parties]."  Id.  Indeed, it has been held that such orders should only be used in situations akin to contempt of court.  Id.; In re Pennie & Edmonds LLP, 323 F.3d 86 (2nd Cir. 2003) (requiring a finding of bad faith before the *sua sponte* imposition of sanctions); Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 767-68 (4th Cir. 2003), *certiorari denied* 540 U.S. 940, 124 S.Ct. 301, 157 L.Ed.2d 253 (2003) (the *sua sponte* imposition of

sanctions after the resolution of the case on the merits is frowned on and requires a "particularly stringent review of the court's action"). Even though the Court finds that these filings by the Plaintiff reflected extremely poor legal judgment, the Court cannot find that Simontacchi took those actions in bad faith.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Defendant Invensys, Inc. is hereby awarded damages against the Plaintiff John F. Simontacchi in the amount of $7,934.60 consisting of the $7,933.60 in legal fees plus the nominal damages of $1.00 as to the breach of the confidentiality provision, pursuant to Judgment entered simultaneously herewith, plus interest thereon from the date of breach. Each party shall bear his/its own costs, no costs being awarded.

**IT IS FURTHER ORDERED** that the Court declines to impose sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure against the Plaintiff John F. Simontacchi.

Signed: February 19, 2009

Martin Reidinger
United States District Judge